1
2
3
4
5
6
7
8                 UNITED STATES DISTRICT COURT
9                SOUTHERN DISTRICT OF CALIFORNIA
10

11  MIKE BORRELLO,                          Case No.:  23-cv-580-GPC-WVG

12                          Plaintiff,
                                            **ORDER**
13  v.                                      **(1) GRANTING MOTION TO**
                                            **DISMISS PLAINTIFF'S**
14  RESPIRONICS CALIFORNIA, LLC;            **COMPLAINT**
    RESPIRONICS NOVAMETRIX, LLC;            **[ECF No. 5]**
15  PHILIPS NORTH AMERICA LLC;              **(2) DENYING PLAINTIFF'S**
    PHILIPS RS NORTH AMERICA LLC;           **REQUEST FOR JUDICIAL NOTICE**
16  PHILIPS DS NORTH AMERICA LLC;           **[ECF No. 15]**
17  PHILIPS HOLDING USA INC.; VITOR
    ROCHA,
18
                         Defendants.
19

20

21        Currently pending before the Court is a motion to dismiss, ECF No. 5, Plaintiff Mike

22  Borrello's Complaint, ECF No. 1-2 at 5 ("Compl.").  Defendants Respironics California,

23  LLC; Respironics Novametrix, LLC; Philips North America LLC; Philips RS North

24  America LLC; Philips DS North America LLC; Philips Holding USA Inc; and Vitor Rocha

25  (collectively "Defendants") move to dismiss the Complaint in its entirety for failure to state

26  a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

27                                    1

28

1   ECF No. 5.  Borrello has responded, ECF No. 13, and Defendants filed a reply, ECF No.
2   14.

3           Pursuant to Civil Local Rule 7.1.d, the Court determined the matter was ripe for
4   decision without oral argument and vacated the hearing that was scheduled for
5   May 26, 2023.  ECF No. 18.  For the reasons that follow, Defendants' Motion to Dismiss
6   is hereby **GRANTED** and limited leave to amend the Complaint is **GRANTED**.

7   **I.     FACTUAL AND PROCEDURAL BACKGROUND**

8           **A.     Borrello's Employment With Respironics**

9           In December 2012, Plaintiff Mike Borrello accepted an at-will employment offer
10  from Defendant Respironics California, LLC, ECF No. 1-2 at 29[1] (Compl. ¶ 29); *id.* at 63–
11  64; see ECF No. 5-1 at 8, a subsidiary of Philips, ECF No. 1-2 at 6.  Borrello started
12  working at Respironics California in January 2013.  ECF No. 5-1 at 10, 11 (Compl. ¶ 11,
13  18); ECF No. 5-1 at 8.

14          Borrello alleges that the Philips North America Severance Plan, *see* ECF No. 1-2
15  at 80, constituted part of the "company policy manual (aka employee handbook)."  *Id.* at
16  13 (Compl. ¶¶ 30–31).  The Severance Plan, attached to the Complaint,[2] explains that
17  Philips North America LLC has "sole discretion" to determine, in relevant parts, employee
18  eligibility for severance benefits; the terms and conditions for receiving such benefits; and
19  whether the terms and conditions have been satisfied.  *Id.* at 82.  "Employees who
20  voluntarily resign" are ineligible for severance benefits under the Severance Plan.  *Id.*

21
22
23  _____

24  [1] Page numbers are based on the CM/ECF pagination.

25  [2] Borrello appears to have attached a summary of the plan, not the "legal plan document."
26  *See* ECF No. 1-2 at 80.  For purposes of this Order, the Court will refer to the plan summary
27  as the Severance Plan.

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## B.   Respironics'/Philips' New Vaccine Policy

Borrello's employment ended shortly after Philips[3] implemented a mandatory new vaccine policy.  On October 27 2021, Philips emailed a "COVID-19 Update" to its North American employees.  ECF No. 1-2 at 15 (Compl. ¶ 46); ECF No. 5-1 at 8–9; *see* ECF No. 1-2 at 69–70 (email).  The email was signed by the Philips CEO as well as the Chief Market Leader, Defendant Vitor Rocha.  ECF No. 1-2 at 70.  The email instructed that "[e]ffective December 8, 2021, employees based in the U.S. are required to be vaccinated against COVID, as a condition of employment at Philips."  *Id.* at 69.  It instructed that employees were required to "provide proof of vaccination by January 10, 2022, or have requested and qualified for a reasonable accommodation."  *Id.*  Otherwise, the employees would "be considered a voluntary quit on February 4, 2022."  *Id.*  The email also explained that this policy change was due to (1) high infection and hospitalization rates in the United States; and (2) a federal "mandate for all federal workers to be vaccinated against COVID, which extends to federal contractors like Philips."[4]  *Id.*

Borrello received another email from Philips on November 8 which gave more specific information about the new COVID-19 vaccination policy.  ECF No. 1-2 at 24 (Compl. ¶ 96-97); ECF No. 1-2 at 66–67.  The email instructed that all "U.S.-based

---

[3] "Philips" is used generally throughout the Complaint and the attached exhibits.  It does not appear to apply to any particular Defendant but rather the overall corporate entity.  The Court similarly uses "Philips" generally in this Order.

[4] Borrello alleges that by January 26, 2022 this federal vaccine mandate was no longer in effect, but Philips did not change its own vaccine mandate policy.  ECF No. 1-2 at 27 (Compl. ¶ 111).  However, January 26 is of course 16 days after Philips' January 10 deadline.  And even though the Supreme Court of the United States stayed the implementation of the mandate on January 13, 2022, *see Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., OSHA*, 142 S. Ct. 661 (2022), this was still 3 days after Philips' January 10 deadline.  Borrello acknowledges that Defendants did not "change its own vaccine mandate policy to align with the court decision."  ECF No. 1-2 at 27 (Compl. ¶ 111).

employees" were required to become fully vaccinated against COVID-19 by January 4, 2022 and must "[u]pload proof of vaccination, or reasonable accommodation qualification [to a Human Resources portal ("HR Portal")] by January 10, 2022." ECF No. 1-2 at 66. The email explained that employees who failed to "upload[] the required documentation by January 10, 2022, or request[] and qualif[y] for a reasonable accommodation, [would] be considered out of compliance and [would] have 25 days to return to compliance." *Id.* The email stated that any employees that had not complied would "be considered a voluntary quit on February 4, 2022." *Id.* The email included a link to a Frequently Asked Questions ("FAQ") page about the new COVID-19 policy and instructed employees to contact their "Human Resources manager with additional questions." *Id.* at 66–67.

The FAQ page addressed much of the information already disclosed via email in greater detail. ECF No. 1-2 at 73–78. In relevant parts, the FAQ page explained that "[e]mployees with a sincerely held religious belief and/or disability impacting their ability to obtain the COVID vaccine should request a reasonable accommodation via the HR Portal." *Id.* at 73 ("via the HR portal" was underlined and appears to have been hyperlinked). It also explained that this vaccine policy applied, as a condition of employment, "to all U.S.-based Philips employees," even those who worked remotely. *Id.* at 74. The last section of the FAQ page was titled "Reasonable Accommodation" which encouraged employees to consult with their physician about any "questions or concerns about risk, allergic dispositions, pregnancy or other medical situations." *Id.* at 77 (capitalization removed). It explained that "[t]he reasonable accommodation process is an interactive dialogue between employee, direct manager and Human Resources." *Id.*

On January 6 and 10, 2022, Borrello received nearly identical emails reminding him about the policy requiring that he upload documents showing that he is fully vaccinated or requesting a reasonable accommodation by January 10. ECF No. 1-2 at 26–27 (Compl. ¶¶

107, 110); *id.* at 102–03 (January 6 email); *id.* at 106–07 (January 10 email).  The emails explained how employees "requiring a medical disability or religious exemption" could submit a request for a reasonable accommodation.  *Id.* at 102, 106.  Sometime after the January 6 email, Borrello alleges that he visited the HR portal and that the only options available for him to select were: "(1) Approved Reasonable Accommodation, (2) fully vaccinated and don't want to share my information with health advocate, (3) fully vaccinated and want to share my information with health advocate, and (4) partially vaccinated." ECF No. 1-2 at 26–27 (Compl. ¶ 108); *id.* at 188.  Borrello did not think these four options adequately applied to him, and so he planned "to write his own letter outlining specific details of why [he] chose not to disclose his medical information."  *Id.* at 27 (Compl. ¶¶ 108–09).

On January 20, 2023 Borrello received an email from a human resources employee informing him that Philips' records indicated he had not complied with the January 10 deadline to upload his vaccine status or reasonable accommodation documents to the HR portal.  *Id.* at 28 (Compl. ¶ 113); *id.* at 114 (January 20 email).  The email, attached as Exhibit 1 to this Order, included a table with seven options from which the employee could select and with corresponding actions for both the employee and manager to take.  *Id.* at 114.  In relevant parts, an employee could select that they were not fully vaccinated and planned "to request a medical or religious accommodation," that they did "not plan to comply with Philips' COVID-19 Vaccine Policy to become Fully Vaccinated," or some other option.  *Id.*  Borrello alleges that "[t]he only option [he] believed he could comply with" was the one stating that he did not plan to comply with the policy and so he contacted his manager, as instructed, to notify the manager of his intent.  *Id.* at 28 (Compl. ¶ 113); *see id.* at 114.

### C.    Borrello's Response To The Vaccine Policy

Borrello responded to the January 20 email on January 24 both via email sent to his manager, human resources, Defendant Rocha, and the Philips CEO, as well as hard copies of a Letter sent to Rocha, human resources, and the Philips CEO. *Id.* at 28 (Compl. ¶ 114); *see also id.* at 115–61 (Letter and other attachments). The Letter, which was also attached as a PDF to the January 24 email, was titled "Request for 'vaccine' status—Notification of Consent and Cease and Desist." *Id.* at 116. The January 24 email from Borrello was not attached to the Complaint, but allegedly informed Borrello's manager of his intention not to comply with the COVID-19 vaccine policy. *See id.* at 28 (Compl. ¶ 113). There is no indication that the body of the email otherwise informed the reader that Borrello sought a religious or medical accommodation. *See* ECF No. 1-2 (absence).

The Letter was four pages long and touched on several subjects. *Id.* at 116–19. The Letter described the vaccine policy as "an unwanted medical treatment that intrude[d] on [Borrello's] medical freedom of choice" and described the "threaten[ed]" employment termination "as retaliation if [he] refuse[d] to comply." *Id.* at 116. It alleged that the emails from Philips about the vaccine policy, starting back in October 2021, "constitute[d] a record of persistent harassment and unlawful coercion to submit to a medical treatment under threats of retaliation" for failure to comply. *Id.* at 117. It alleged that Philips' vaccine policy could be in breach of the implied covenant of good faith and fair dealing and described an opinion from the Supreme Court of the United States striking down the Occupational Safety and Health Administration's ("OSHA") vaccine policy requiring that employees for federal contractors receive the COVID-19 vaccine. *Id.* at 117–18. In the Letter, Borrello acknowledged that Philips offered an alternative to receiving the vaccine in the form of a "reasonable accommodation," but assured the letter recipients that he had no disabilities to which he believed reasonable accommodations would apply. *Id.* at 118. The Letter did not mention anything about Borrello seeking a religious accommodation.

*Id.* at 116–19 (absence).  It alleged that his vaccination status was "private medical information" for which "no law requires that [he] disclose such status" and "cannot legitimately be used by an employer to discriminate against employees and be used as a reason to terminate employment." *Id.*  Borrello asserted that he had no intention of quitting his job and that "until [he] state[d] otherwise by a signed letter of resignation," Philips would be the "moving party" behind any termination. *Id.* at 118–19.  Borrello ended his Letter with a "friendly warning . . . to stop emailing or posting through the company intranet, requests for medical status, threats of termination, and to stop all further actions attempting to manipulate [him] to play games with [his] health." *Id.* at 119.

Attached to the Letter was what Borrello referred to as an "affidavit," but to avoid confusion, the Court will refer to as the "Attachment."[5]  *Id.* at 121.  The Attachment contained a list of reasons in support of Borrello's position that "[n]o person should ever be coerced to disclose medical information or forced to receive unwanted medical procedures under threat, including the threat of losing employment." *Id.*  The last reason, and the one emphasized in the Complaint, *id.* at 29 (Compl. ¶ 117), points to Borrello's "*spiritual* wellbeing, and right to remain the essence of the person [he] was born to be; to maintain [his] sacred genetic constitution inherited from [his] parents, and the right of respect by others to do no harm to [his] spiritual being.  [He is] not a slave." *Id.* at 121 (emphasis in original).  Borrello alleges in his Complaint that this is his sincerely held religious belief. *Id.* at 29 (Compl. ¶ 117).

Within the Attachment, Borrello also expressed his "deep[] concern[]" and "fearful belief that receiving any COVID-19 vaccine could adversely affect [his] condition of

---

[5] An affidavit is "[a] voluntary declaration of facts written down and sworn to by a declarant, usu[ally] before an officer authorized to administer oaths." *Affidavit*, Black's Law Dictionary (11th ed. 2019).  The Attachment does not appear to be a sworn declaration, *see* ECF No. 1-2 at 121–27, and is therefore not an affidavit in the legal sense.

excellent health." *Id.* at 122.  He then explained that his review and understanding of data from the Vaccine Adverse Event Reporting System ("VAERS"), and other scholarly works, demonstrated that the COVID-19 vaccines were not safe.  *Id.* at 122–24; *see also id.* at 128–50 (gathering sources and stating conclusions).  He also pointed to various cases from the Supreme Court of the United States which he interpreted as supporting his position that a private employer could not condition employment upon obtaining the COVID-19 vaccine.  *Id.* at 124–25.  After stating that COVID-19 vaccines are different from traditional vaccines because "[t]hey are a therapy that messes with the genetic machinery of somatic cells," Borrello explained that "[w]hile some may use this fact to argue a religious exemption (. . . Pfizer vaccines are indeed manufactured using human fetal tissue), [his] primary concern rather considers possible long-term effects that cannot be predicted by any computer simulation or paper analysis." *Id.* at 126.  Nowhere in the Attachment did Borrello request a religious accommodation. *See id.* at 121–50 (absence).

### D.  Borrello's Final Days With Respironics/Philips

On January 31, 2022 Borrello's manager responded via email.  ECF No. 1-2 at 180.  The manager confirmed that, pursuant to Borrello's January 24 email and conversations they had, Borrello did "not plan to come into compliance with" Philips' vaccination policy, which was a "condition of [his] employment." *Id.*; *see also id.* at 30 (Compl. ¶ 119).  Accordingly, the manager instructed Borrello on how to prepare for his final days of employment at Philips and what to do should Borrello change his position on the vaccine policy or have any questions.  *Id.* at 180.  Borrello recalls having "a conversation with his manager" at some point "[d]uring this period of time" in which the manager "disclosed . . . that the discharge of employees for not complying with [Philips'] COVID-19 vaccine mandate was largely an operation managed by corporate personnel" without any room for input or decisionmaking by management.  *Id.* at 30 (Compl. ¶ 121).

Borrello followed up with his manager and a human resources representative as instructed in the January 31 email. *Id.* (Compl. ¶¶ 120, 122). Upon meeting online with human resources, Borrello learned that the cause for termination would be recorded as "Resignation – for personal reasons." *Id.* (Compl. ¶ 122). Borrello alleges that he responded that "this reason and cause was not correct" given that his Letter had made clear he would only resign via letter of resignation. *Id.* at 30–31 (Compl. ¶ 122). Human resources had not received any such letter of resignation. *Id.* at 31 (Compl. ¶ 122). The human resources representative purportedly had seen Borrello's Letter, "but had not fully read it." *Id.* at 31 (Compl. ¶ 125). Borello alleges that the human resources representative "had no further comment to offer regarding accommodating [Borrello]'s reasons not to comply" with the vaccine policy, *id.* (Compl. ¶ 126), and that nobody from Philips responded to the concerns or reasons raised in his Letter, *id.* at 32 (Compl. ¶ 127). He alleges that his Letter "was never reviewed and considered by [D]efendant[s'] HR [and] management." *Id.* at 33 (Compl. ¶ 140).

"On February 4, 2022 [Borrello] was discharged from his employment with Philips." *Id.* (Compl. ¶ 129). His termination was attributed to his own resignation. *Id.* (Compl. ¶ 129); *see id.* at 184 (February 26 email from human resources). He alleges that the "more accurate reason for [his] discharge should have been either insubordination or misconduct." *Id.* at 32 (Compl. ¶ 134). Because Philips reported that Borrello voluntarily resigned, he was not eligible for severance pay, three months of health insurance, or unemployment benefits. *Id.* at 36 (Compl. ¶¶ 155–57); *id.* at 182.

### E.    Philips' Layoffs Distinct From Vaccine Policy

In late March 2022, pursuant to the Worker Adjustment and Retraining Notification Act ("WARN Act"), Philips North America LLC notified the California Employment Development Department ("EDD") that over the next year or so it planned to lay off approximately 130 employees from its Carlsbad facility and transfer the remaining

employees—roughly 78 employees—to another site.  ECF No. 1-2 at 34 (Compl. ¶ 144); *id.* at 190–92.  Borrello alleges that the majority of the roughly 78 employees were actually terminated by March 2023 rather than relocated, *id.* at 34 (Compl. ¶ 145), without notification to the EDD, *id.* (Compl. ¶ 146).

Borrello alleges that Philips used the vaccine mandate as a pretext for the "convenient opportunity to discharge [Borrello], and perhaps other employees across North America that refused to comply with the vaccine mandate, without having to honor the company's severance policy."  *Id.* at 35 (Compl. ¶ 147).  Borrello points to business troubles and Philips' corresponding drop in stock price in support of this assertion.  *Id.* at 35–36 (Compl. ¶ 152).

### F.    Borrello's Lawsuit

In February 2023 Borrello filed a Complaint in the Superior Court of California.  ECF No. 1-2 at 5.  In March, Defendant Respironics California removed the matter to this Court under federal diversity and federal question jurisdiction.  ECF No. 1 at 2–8.

Borrello alleges ten causes of action, each against all Defendants:  (1) violation of civil rights under California Civil Code §§ 43–53.7; (2) violation of autonomous privacy rights under Article I, Section 1 of the California Constitution; (3) religious discrimination in violation of California Government Code § 12940(a); (4) failure to prevent discrimination in violation of California Government Code § 12940(k); (5) unlawful retaliation under California Government Code § 12940(h); (6) failure to accommodate religious belief or observance in violation of California Government Code § 12940(l); (7) breach of the implied covenant of good faith and fair dealing; (8) actual fraud under California Civil Code § 1572; (9) fraud, deceit, and negligent misrepresentation under California Civil Code § 1572(5); and (10) wrongful termination of employment in violation of California Government Code § 12290 and California Labor Code § 1102.5.  ECF No. 1-2 at 39–60 (Compl. ¶¶ 190–293).  Borrello asks for monetary damages of $119,686 for

the severance benefits he was denied and $3,600 for medical insurance he was denied; either a letter of apology from the Philips CEO or consequential and punitive damages amounting to $1,204,000 due to stigma and loss of reputation; and $75,600 for attorney's fees and costs.  *Id.* at 60–61.

Defendants moved to dismiss the complaint for failure to state a claim.  ECF No. 5. Borrello has responded, ECF No. 13, and Defendants filed a reply, ECF No. 14.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint when the plaintiff has failed "to state a claim upon which relief can be granted."  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  Rule 8(a)(2) requires that the plaintiff set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  The United States Supreme Court has interpreted Rule 8(a)(2) as requiring that the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"To survive a motion to dismiss, a complaint must contain a sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when it contains factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th

Cir. 2009).  "All reasonable inferences must be drawn in favor of the non-moving party." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010).

"Generally, a court may not consider material beyond the complaint in ruling" on a motion to dismiss.  *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).  "However, material which is properly submitted as part of the complaint may be considered."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).  Although the court must accept as true all material facts alleged in a complaint when ruling on a motion to dismiss, it need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Courts "liberally construe[]" documents filed pro se, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  But while giving liberal interpretation to pro se complaints, a court "may not supply essential elements of the claim that were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' " i.e., "the amendment would be futile."  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serve-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## III.   DISCUSSION

### A.   Preliminary Issue:  Judicial Notice

As a preliminary matter, the Court addresses the treatment of exhibits attached to the Complaint.  Roughly one week after Borrello's response to the pending motion was due and timely submitted, Borrello filed a request for judicial notice of Exhibit 12 to the

Complaint.  ECF No. 15.  Defendants objected to this request as untimely and inappropriate given the "accusations, opinions, questions, and citations to over one hundred external sources" within Exhibit 12.  ECF No. 16 at 2–3.  Defendants conceded, however, that for purposes of a motion to dismiss, the Court may accept as true all factual matters asserted in the Complaint and attached exhibits.  *Id.* at 3.  Borrello subsequently replied to Defendants' objection, asking that "the [C]ourt withdraw his request for judicial notice." ECF No. 17 at 2.  Accordingly, the Court DENIES Borrello's request for judicial notice of Exhibit 12, ECF No. 15, beyond what may typically be considered on a motion to dismiss. For clarity, the Court provides the following explanation of what it means when it instructs that it will accept as true factual assertions contained in the Complaint and attached exhibits.

Borrello attached 23 exhibits to his Complaint and refers to them extensively throughout the Complaint such that the Court may properly consider the exhibits—and the facts alleged in these exhibits—when ruling on Defendants' motion to dismiss.  For example, when analyzing the merits of Defendants' motion to dismiss, the Court may accept and rely on Exhibit 1 to the Complaint for the fact that Borrello received a December 2012 offer letter from Philips for his "at-will position of Principal Controls Engineer[] in Carlsbad, CA."  ECF No. 1-2 at 63.  The Court is under no obligation to accept-as-true any legal conclusions asserted in either the Complaint or attached exhibits. *See, e.g.*, *Iqbal*, 556 U.S. at 678.  Accordingly, while the Court may accept as true the facts asserted by Borrello in Exhibit 12 attached to his Complaint concerning his refusal to comply with Philips' COVID-19 vaccination policy, the Court is under no obligation to accept as true any legal conclusions asserted in Exhibit 12, such as the applicability of any particular constitutional provision or Supreme Court case to Borrello's specific situation. *See, e.g.*, ECF No. 1-2 at 121 (the Court may accept as true that Borrello's listed reasons are indeed the reasons behind his decision not to follow the vaccine policy, but need not

accept as true that the Attachment is actually an affidavit simply because it is labeled as such).

**B.      Borrello Fails To State A Claim Upon Which Relief Can Be Granted.**

Defendants move to dismiss each of Borrello's causes of action for failing to state a claim upon which relief can be granted.  ECF No. 5.

**1.      First cause of action:  civil rights**

Borrello's first cause of action alleges that Defendants' violated his civil rights under California Civil Code sections 43 through 53.7.  ECF No. 1-2 at 39–41 (Compl. ¶¶ 177–189).  This code range covers roughly 70 statutes addressing many personal rights, most of which are plainly inapplicable here such as breastfeeding, Cal. Civ. Code § 43.3, and permissible age limitations for housing, Cal. Civ. Code § 51.3.  Borrello's arguments under the first cause of action implicate only the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1; *see* ECF No. 1-2 at 39–41 (Compl. ¶¶ 177–189).  Because Borrello's first cause of action plainly fails to describe a cognizable legal theory as to any statute within California Civil Code sections 43 through 53.7 aside from the Bane Act, it fails to provide Defendants fair notice of the remaining claims and grounds upon which  they rest,[6] *see* Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007), and are hereby DISMISSED.

As for the remaining allegation under Borrello's first cause of action that Defendants violated the Bane Act, Defendants argue that this claim also fails because Borrello did not plead all the essential elements to succeed under such a claim.  ECF No. 5-1 at 13. Specifically, Defendants correctly assert that the Bane Act requires Borrello to prove that "Defendants interfered with or attempted to interfere with the exercise or enjoyment of his

---

[6] Defendants point out this omission in their motion to dismiss, ECF No. 5-1 at 13, and Borrello appears to concede this point when he emphasizes in his opposition that "his civil rights were violated under the Bane Act," ECF No. 13-1 at 14.

1   rights by threat, intimidation, or coercion." *Id.* at 13; *see* Cal. Civ. Code § 52.1(b), (c).
2   They argue that the facts Borrello has alleged fail to satisfy this element because:
3   (1) "[s]peech alone is not sufficient to support an action" under subsection (b) or (c) of the
4   Bane Act, unless a plaintiff can show that the "speech itself threatens violence" and that
5   the plaintiff "reasonably fears that, because of the speech, violence will be committed
6   against them or their property," Cal. Civ. Code § 52.1(k); and (2) Borrello alleges only that
7   Defendants "intimidated [him] with numerous emails, herein disclosed as exhibits of
8   evidence to receive a COVID-19 vaccine or else lose his job," ECF No. 1-2 at 40 (Compl.
9   ¶ 185). ECF No. 5-1 at 13–14.

10      Borrello responds that the emails caused him anxiety and fear because they required
11  that he either risk his health and well-being by taking the vaccine and "disclose privately
12  held and protected information regarding medical condition and/or religious beliefs" or
13  lose his job. ECF No. 13-1 at 12–14. He argues that this constituted both intimidation and
14  coercion. *Id.* Borrello does not engage with subsection (k) of the Bane Act, requiring that
15  for speech alone to support an action under this statute, there must be some threat of
16  violence contained in the speech causing him to reasonably fear that violence would be
17  committed against him or his property.

18      The Bane Act "was intended to address only egregious interferences with
19  constitutional rights, not just any tort. The act of interference with a constitutional right
20  must itself be deliberate or spiteful." *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360,
21  395 (2017) (quoting *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012)).
22  With this statutory purpose in mind, it is no surprise that "[s]peech alone is not sufficient
23  to support an action brought pursuant" to the Bane Act, "except upon a showing that the
24  speech itself threatens violence" and that the threats of violence place the recipient in
25  reasonable fear that violence will occur against them or their property. Cal. Civ. Code
26  § 52.1(k). Even under the assumption that Philips' vaccine policy was unlawful, the only

27
28

15

1   actions by Defendants which Borrello alleges violated the Bane Act concern speech

2   threatening job loss, not violence.  *See* ECF No. 1-2 at 39–41 (Compl. ¶¶ 179, 183, 185).

3   Although Borrello may feel like this was intimidating or coercive, it fails as a matter of law

4   under the Bane Act.  Borrello's opposition brief also does not suggest that any Defendant

5   made any threat of violence within the scope of the Bane Act or point to any additional

6   factual allegations consistent with the current pleadings that could possibly cure this

7   deficiency.  *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

8        Borrello's first cause of action concerning alleged civil rights violations is

9   DISMISSED.  Although the Court entertains doubts that the above-discussed pleading

10  deficiencies for this cause of action can be remedied, the Court grants Borrello leave to

11  amend this cause of action.

12                    **2.    Second cause of action:  privacy rights**

13       Borrello's second cause of action alleges that Philips violated his right to privacy

14  under the California Constitution.   ECF No. 1-2 at 41–43 (Compl. ¶¶ 190–200).

15  Specifically, he alleges that Defendants' "action of mandating that [he] take the COVID-

16  19 vaccine or be considered a 'voluntary quit'" constituted a "serious invasion of [his]

17  privacy and . . . the California Constitution." ECF No. 1-2 at 42 (Compl. ¶ 197).  He alleges

18  that Defendants each "acted with oppression, fraud, and malice, and in conscious disregard

19  of [his] constitutional rights and therefore [he] is entitled to punitive damages pursuant to

20  California Civil Code section 3294" as well as legal expenses under California Government

21  Code section 12965(b).  *Id.* at 43 (Compl. ¶¶ 199–200).

22       Article I section 1 of the California Constitution recognizes that "[a]ll people . . .

23  have inalienable rights," including the right to "pursu[e] and obtain[] safety, happiness, and

24  privacy."  The California Supreme Court has held that "the Privacy Initiative in article I,

25  section 1 of the California Constitution creates a right of action against private as well as

26  government entities." *Hill v. Nat'l Coll'ate Athletic Ass'n*, 7 Cal. 4th 1, 20 (1994).  The

27

28

elements necessary to maintain a "cause of action for violation of the state constitutional right to privacy" are: (1) "the identification of a specific, legally protected privacy interest";[7] (2) "a reasonable expectation of privacy on plaintiff's part"; and (3) the "[s]erious invasion of [a] privacy interest." *Id.* at 35–37; 39–40. "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Id.* at 37. If a plaintiff has manifested "voluntary consent to the invasive actions of [the] defendant, . . . . a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person' so as to justify tort liability." *Sheehan v. San Francisco 49ers, Ltd.*, 45 Cal. 4th 992, 1000 (2009) (quoting *Hill*, 7 Cal. 4th at 26). "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. "A person's medical history and information and the right to retain personal control over the integrity of one's body is protected under the right to privacy." *Love v. State Dep't of Educ.*, 29 Cal. App. 5th 980, 993 (2018).

A defendant may defeat a state constitutional privacy claim either by "negating any of the three elements" or by showing "that the invasion of privacy is justified because it substantially furthers one or more countervailing interests." *Hill*, 7 Cal. 4th at 40. "Whether a legally recognized privacy interest is present in a given case is a question of

---

[7] "Legally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." *Hill*, 7 Cal. 4th at 35. Borrello specifically alleges a violation to his autonomous privacy rights, ECF No. 1-2 at 41–42 (Compl. ¶¶ 193–95), though the Court broadly construes his Complaint to include a claim for invasion of informational privacy as well, *see id.* at 42 (Compl. ¶ 197 (concerning obligation to provide proof of vaccination)); ECF No. 13-1 at 15 (arguing that he was coerced into revealing "his privately held medical condition and religious beliefs").

1   law to be decided by the court." *Id.*   In contrast, the second and third elements, concerning

2   whether a plaintiff had a reasonable expectation of privacy and the severity of the invasion

3   of the privacy interest, typically involve mixed questions of law and fact inappropriate for

4   ruling on a motion to dismiss.  *See Sheehan*, 45 Cal. 4th at 1000 (concluding "[t]he factual

5   record of the case—which consist[ed] solely of the complaint—d[id] not establish what the

6   competing social interests" were); *Firefighters4Freedom v. City of Los Angeles*, No.

7   B320569, 2023 WL 4101325, at *11–18 (Cal. App. June 21, 2023) (reversing trial court

8   decision sustaining defendant's demurrer as to plaintiff's violation of privacy claim); *LA

9   Cnty. Free Found. v. County of Los Angeles*, No. 2:22-cv-00787, 2022 WL 18278624, at

10  *4 (C.D. Cal. June 1, 2022) (declining at motion to dismiss stage "to resolve mixed

11  questions of fact and law" as to whether a county employer's vaccine policy constituted a

12  constitutional invasion of privacy).  *But cf. Burcham v. City of Los Angeles*, 562 F. Supp.

13  3d 694, 705 (C.D. Cal. 2022) (placing burden on plaintiffs at motion to dismiss stage to

14  prove vaccine policy was "not at least rationally related to the state's interest in preventing

15  the spread of COVID" to overcome the "presumption of constitutional validity" when state

16  imposes measures to safeguard public health).

17        Defendants argue that this cause of action should be dismissed because Borrello does

18  not sufficiently allege the elements necessary to succeed on his claim.   Specifically,

19  Defendants argue that Borrello did not allege—nor can he allege—any serious invasion of

20  privacy.  ECF No. 5-1 at 14–15.  Borrello responds that his privacy was invaded when he

21  was coerced under threat of losing his job "to reveal his privately held medical condition

22  and religious beliefs by his" Letter sent by the January 24 email.  ECF No. 13-1 at 15.  This

23  argument is distinct from the action which Borrello alleges in his Complaint gave rise to

24  his claim for invasion of privacy:  the "action of mandating that [Borrello] take the COVID-

25  19 vaccine or be considered a 'voluntary quit' . . . and [Defendants'] conditioning of any

26  future employment prospects on proof of COVID-19 vaccination."  ECF No. 1-2 at 42

27

28                                          18

(Compl. ¶ 197).  Notwithstanding the paragraphs at the start of each new cause of action purporting to "re-allege[] all of the allegations in the paragraphs above as though fully set forth herein," *e.g.*, ECF No. 1-2 at 41 (Compl. ¶ 190), and even under a broad construction of Borrello's Complaint, Borello's second cause of action puts the Defendants on notice only of Borrello's allegation that his privacy was violated when he was allegedly mandated to either become vaccinated or lose his job.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  If Borrello intended to claim his privacy was somehow invaded because of the January 24 email and Letter he sent, he should make that explicit in the amended complaint.  The Court proceeds based on how the Complaint frames the invasion of privacy, not how Borrello frames the invasion in his response.

Borrello's description of Defendants' alleged privacy violations—that they purportedly "mandate[ed] that [Borrello] take the COVID-19 vaccine or be considered a 'voluntary quit'[]and their conditioning of any future employment prospects on proof of COVID-19 vaccination,"  ECF No. 1-2 at 42 (Compl. ¶ 197)—is factually at odds with the attachments to the Complaint which suggest that Philips allowed employees to apply for religious and medical accommodations and that Borrello failed to request one.  *See, e.g.*, ECF No. 1-2 at 66, 73 (notifying employees about deadlines and that accommodations were available); ECF No. 1-2 at 28 (Compl. ¶¶ 108, 113–14) (failing to allege that Borrello ever requested an accommodation).  Thus, the Court rejects the assertion in the Complaint that Defendants conditioned Borrello's employment on him obtaining a COVID-19 vaccine without the option of obtaining a medical or religious accommodation, *see* ECF No. 1-2 at 42 (Compl. ¶ 197); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), and finds that Borrello has failed to allege the elements necessary for his claim of a constitutional violation of his privacy rights.

The Court GRANTS Defendants' motion to dismiss Borrello's second cause of action.  Borrello is granted leave to amend this cause of action.  Any amended complaint

should make clear which act Borrello is alleging violated his constitutional privacy rights such that Defendants are put on fair notice of what the claim is and the grounds upon which it rests.

### 3.   Third through sixth and tenth causes of action:   religious discrimination

Borrello alleges that he "held sincere religious beliefs that precluded the injection of COVID-19 vaccines into his body." ECF No. 1-2 at 43 (Compl. ¶ 203). He alleges that he communicated these beliefs to Defendants in his January 24 email, but that Defendants ignored his email and took "adverse employment actions against" him. *Id.* at 43–44 (Compl. ¶ 205). Borrello raises five causes of action for violations of California's Fair Employment and Housing Act ("FEHA") stemming from these events: (1) he alleges in his third cause of action that Defendants violated California Government Code section 12940(a) by engaging in religious discrimination, *id.* at 44 (Compl. ¶¶ 206–08); (2) he alleges in his fourth cause of action that Defendants violated section 12940(k) "by failing to take all reasonable steps necessary to prevent discrimination from occurring in the workplace," *id.* at 45 (Compl. ¶ 212); (3) he alleges in his fifth cause of action that defendants violated section 12940(h) by taking adverse actions against him in retaliation for his Letter "describing the nature of his sincerely held religious beliefs, and his associated inability to take the COVID-19 vaccine as a new condition to continue employment," *id.* at 46 (Compl. ¶¶ 217–18); (4) he alleges in his sixth cause of action that defendants violated section 12940(l) by discriminating against, harassing, and failing to accommodate Borrello's sincerely held religious beliefs, *id.* at 47 (Compl. ¶ 226); and (5) he alleges in his tenth cause of action that his employment was terminated in part because of his religious faith in violation of FEHA, the California Constitution, and California Labor Code section 1102.5, *id.* at 58 (Compl. ¶ 282). Defendants argue that these causes of action fail because Borrello fails to allege facts supporting that he holds a legally-

protected religious belief and because he fails to allege facts suggesting that Defendants were aware of such a belief. ECF No. 5-1 at 15–22, 24–25.

Section 12940 of the California Government Code prohibits employers from discriminating against people based on "religious creed," among other protected classes of people.   Generally, an employer may not hire, fire, or offer disparate terms of compensation, conditions, or privileges of employment based on a person's religious creed, Cal. Gov. Code § 12940(a), "unless the employer . . . demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, *id.* § 12940(l).   Employers must also "take all reasonable steps necessary to prevent discrimination and harassment from occurring," *id.* § 12940(k), and may not "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [section 12940]," *id.* § 12940(h).

"The elements of a religious creed discrimination claim are that:  the plaintiff had a bona fide religious belief; the employer was aware of that belief; and the belief conflicted with an employment requirement." *Friedman v. S. Cal. Permanente Med. Grp.*, 102 Cal. App. 4th 39, 45 (2002).   Employers must accommodate employees' "religious beliefs unless doing so would impose undue hardship." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023).   Additionally, to succeed on a claim for failure to prevent discrimination under section 12940(k), a plaintiff must first demonstrate "actual discrimination or harassment under FEHA." *Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1314 (2015) (quoting *Carter v. Cal. Dep't of Veterans Affs.*, 38 Cal. 4th 914, 925 n.4 (2006)).   Similarly, to succeed on a claim for retaliation under section 12940(h), a plaintiff must be able to demonstrate that they "engaged in a 'protected activity'" in addition to the employer taking some adverse action against the plaintiff stemming from the plaintiff's engagement in the protected activity. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).   A prima facie claim for wrongful termination

based on discrimination prohibited under FEHA requires these same elements before shifting the burden "to the employer to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action." *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1108–09 (2007).

Borrello's third through sixth and tenth causes of action fail because he fails to allege both that he holds a bona fide religious belief and that his employer was aware of any such religious belief.

> ### a.    Borrello fails to allege facts supporting that he held a legally protected religious belief.

Borrello alleges throughout his Complaint that he "held sincere religious beliefs that precluded the injection of COVID-19 vaccines into his body." *E.g.*, ECF No. 1-2 at 43 (Compl. ¶ 203). His description of this religious belief, as set out in the Complaint and his Attachment, is that he has the "right to remain the essence of the person [he] was born to be; to maintain [his] sacred genetic constitution inherited from [his] parents[;] . . . the right of respect by others to do no harm to [his] spiritual being[;] and that [he is] not a slave that can be forced to change his genetic makeup." *Id.* at 29 (Compl. ¶ 117) (referring to *id.* at 121); *see also* ECF No. 13-1 at 15 (pointing to portions of Complaint purporting to demonstrate sufficiency of religious belief). Although the Court need not question Borrello's "allegation that his beliefs are sincerely held," his conclusory allegations may be disregarded while the Court embarks on the "difficult and delicate task" to determine whether his beliefs constitute a legally protected religious belief or practice. *Friedman*, 102 Cal. App. 4th at 69–70 (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981)).

"Religious creed" under FEHA is defined to "include[] any traditionally recognized religion as well as beliefs, observances, or practices, which an individual sincerely holds and which occupy in his or her life a place of importance parallel to that of traditionally

recognized religions." 2 Cal. Code Regs. § 11060.  The currently-recognized "best way to assess whether an FEHA claimant's 'beliefs, observances, or practices' " constitute a legally protected "religious creed" is to objectively analyze whether:  (1) the beliefs "address[] fundamental and ultimate questions having to do with deep and imponderable matters"; (2) the beliefs are "comprehensive in nature; . . . consist[ing] of a belief-system as opposed to an isolated teaching"; and (3) the beliefs "can be recognized by the presence of certain formal and external signs." *Friedman*, 102 Cal. App. 4th at 69 (quoting *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3rd Cir. 1981)).  Courts have found that "fundamental and ultimate questions having to do with deep and imponderable matters" might include "the meaning of human existence; the purpose of life; theories of humankind's nature or its place in the universe; matters of human life and death; or the exercise of faith." *Id.* at 70; *see also Africa*, 662 F.2d at 1033 (listing topics of "life and death, right and wrong, and good and evil" under "fundamental and ultimate questions" category).  A belief may be so "comprehensive in nature" as to constitute a religion if, for example, the "belief system derives from a power or being or faith to which all else is subordinate or upon which all else depends." *Friedman*, 102 Cal. App. 4th at 70; *accord United States v. Seeger*, 380 U.S. 163, 177 (1965).  And "external signs of religion" would include "teachers or leaders; services or ceremonies; structure or organization; orders of worship or articles of faith; or holidays." *Friedman*, 102 Cal. App. 4th at 70; *accord Alvarado v. City of San Jose*, 94 F.3d 1223, 1229 (9th Cir. 1996).  The "[f]lexible application" of these objective guidelines enables "courts and administrative agencies to make the sometimes subtle distinction between a religion and a secular belief system." *Friedman*, 102 Cal. App. 4th at 69.

There is nothing in the Complaint or attachments to the Complaint to suggest that Borrello's beliefs precluding him from obtaining the COVID-19 vaccine constituted a "religious creed" subject to FEHA's protection.  Borrello neither argues nor alleges that

his belief system at issue is comprehensive in nature, that it ponders any fundamental or ultimate questions, or has any external signs upon which it can be recognized.  *See* ECF No. 1-2 at 5–61 (absence); ECF No. 13-1 (absence).  Borrello's belief system, as he has defined it, ECF No. 1-2 at 29 (Compl. ¶ 117), could be broadly interpreted to contemplate matters of human life and death, but there is no suggestion that there are any external signs of the faith or that it is comprehensive in nature such that everything else would be subordinate to this belief system.  Thus, even though Borrello has made conclusory allegations that he had a sincerely held religious belief preventing him from obtaining the COVID-19 vaccination, he has failed to allege that he held a religious belief that would be recognized as a religious creed and thus protected under FEHA.

### b.   Borrello fails to allege facts supporting that Defendants were put on notice of any sincerely held religious belief.

Although Borrello points to portions of the Complaint in which he alleges that his January 24 email and Letter should have put Defendants on notice of what he purports constitutes a "sincerely held [religious] belief," ECF No. 1-2 at 29 (Compl. ¶ 117) (alteration in original), and that they retaliated against him for such beliefs, *id.* at 46 (Compl. ¶ 217), the Letter and his description of how he submitted the letter contradict such claims.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

First, the contents of the Letter and Attachment do not suggest that Borrello was refusing to comply with the vaccine policy for religious reasons or that a reasonable accommodation would be feasible.  The closest the Letter and Attachment come to addressing any religious beliefs is when Borrello alludes to his "spiritual wellbeing, and right to remain the essence of the person [he] was born to be; to maintain [his] sacred genetic constitution inherited from [his] parents, and the right of respect by others to do no harm to [his] spiritual being."  ECF No. 1-2 at 121.  Indeed, in his opposition papers Borrello does not point to any other portion of his Letter or Attachment addressing his

religious beliefs, *see* ECF 13-1 (absence), and Borrello appears to have retroactively added the words "sincerely held [religious] belief" in his Complaint, ECF No. 1-2 at 29 (Compl. ¶ 117) (alteration in original), in an attempt to make a colorable claim for religious discrimination.  This is made all the more apparent later in the Attachment when Borrello distinguishes his reasons for not vaccinating from those concerning religious beliefs: Although some people may use the fact that COVID-19 vaccines "are a therapy that messes with the genetic machinery of somatic cells . . . to argue a religious exemption (. . . Pfizer vaccines are indeed manufactured using human fetal tissue), [his] primary concern rather considers possible long-term effects that cannot be predicted by any computer simulation or paper analysis."[8]  ECF No. 1-2 at 126.  Nowhere else in the 35 pages of Borrello's Letter or Attachment does he talk about anything approaching a religious belief.[9]

Second, the circumstances around Borrello's submission of the letter would not put a reasonable employer on notice of any religious beliefs even if Borrello had raised the matter in its contents.  According to the Complaint and attached exhibits, Philips asked

---

[8] Defendants noted this discrepancy in their moving papers, ECF No. 5-1 at 16–17, and Borrello responds only to argue that he was "actually distinguish[ing] his religious belief from another religious belief (concerns regarding fetal stem cells)," ECF No. 13-1 at 21 (emphasis omitted).  This appears to be an ad hoc argument because the statement which he alleges represents his bona fide religious belief—concerning his "sacred genetic constitution inherited from his parents," ECF No. 1-2 at 121—was *directly* implicated in this sentence due to the COVID-19 vaccine purportedly "mess[ing] with the genetic machinery of somatic cells," and yet Borrello chose to distinguish *his* reasons for turning down the vaccine from those that would implicate "a religious exemption," *id.* at 126.

[9] Borrello appears to concede this point in his response.  *See* ECF No. 13-1 at 21 (responding to Defendants' assertion that religion is not discussed anywhere else in the Letter).  Even if his Letter or Attachment had notified Defendants of his bona fide religious belief, his claims under section 12940 are further undercut by his assertion in his Letter that he did not believe any reasonable accommodations would apply to him.  ECF No. 1-2 at 118.

Borrello to either become fully vaccinated and "[u]pload proof of vaccination, or reasonable accommodation qualification to" the HR portal by January 10, 2022. ECF No. 1-2 at 66. The FAQ page associated with the vaccine policy instructed that "[e]mployees with a sincerely held religious belief and/or disability impacting their ability to obtain the COVID vaccine should request a reasonable accommodation via the HR Portal." *Id.* at 73. Borrello does not allege that he followed these instructions for requesting a reasonable accommodation. Rather, he waited over three months, until January 24, 2022, to formally indicate that he did not plan to comply with the vaccine policy, ECF No. 1-2 at 28 (Compl. ¶¶ 113–14); he never followed the instructions to request a reasonable accommodation.[10] As Defendants point out, Borrello voluntarily provided the Letter and Attachment. *See* ECF No. 14 at 7.

Absent any suggestion that the January 24 email containing the Letter and Attachment indicated that Borrello sought a religious accommodation, Borrello fails to allege that the Defendants were ever made aware of Borrello's "religious" beliefs precluding him from obtaining the vaccine. It is unclear whether Defendants would have reasonably been expected to open the email attachments and read through all 35 densely-printed pages to determine that Borrello was trying to claim a religious exemption through

---

[10] Borrello alleges that he visited the HR portal sometime after the January 6 email but did not believe any of the options in the web form applied to his circumstances. ECF No. 1-2 at 26 (Compl. ¶ 108). However, the Exhibit he attached appears to correspond to the step an employee was supposed to complete upon receiving their vaccine or a reasonable accommodation; distinct from the step of requesting a reasonable accommodation. *See id.* at 188 (web form); *id.* at 73 (FAQ instruction for requesting reasonable accommodation). Furthermore, in the event the FAQ and HR portal did not clearly explain how to request a reasonable accommodation, Borrello does not allege that he ever asked his manager or human resources representative about how to complete this step, *see* ECF No. 1-2 (absence); instead he waited until his January 24 email, Letter, and Attachment to allegedly "reveal his privately held medical condition and religious beliefs," ECF No. 13-1 at 15.

an alternate means from what was asked of him, especially when his email indicated that he did not plan to comply with the policy and was not seeking an exemption.  *See* ECF No. 1-2 at 28, 115–61.  Furthermore, Borrello alleges that when he met with a human resources representative on February 2, the representative admitted to having seen his Letter "but had not fully read it."  *Id.* at 31 (Compl. ¶ 125).  Even then, when faced with the realization that perhaps nobody had read his Letter, Borrello does not allege that he took steps to inform anyone of what he purports to be a bona fide religious belief.  *See id.* at 30–32 (Compl. ¶¶ 119–29).  Finally, Borrello alleges that his Letter "was never reviewed and considered by [Defendants] HR [and] management."[11]  *Id.* at 33 (Compl. ¶ 140).

Because the Complaint fails to allege that Borrello held a religious belief recognized under FEHA and that Defendants were ever aware of his purportedly bona fide religious belief, the Court GRANTS Defendants' motion to dismiss Borrello's third, fourth, fifth, sixth, and tenth causes of action.  Given the nature of these pleading deficiencies, the Court entertains doubts that the causes of action alleging religious discrimination can be cured, but the Court is not prepared to say it is impossible to do so and thus grants Borrello leave to amend these causes of action.

### 4.    Seventh cause of action:  breach of implied covenant of good faith and fair dealing

"The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes."  *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 690 (1988).  Although "[a]n at-will employee cannot use the implied covenant to

---

[11] Accordingly, it strains credulity that Defendants' could have taken retaliatory action against him because of the religious beliefs stated in his Letter, as alleged in Borrello's fifth cause of action.  ECF No. 1-2 at 46 (Compl. ¶ 217–18).

1   create a for cause employment contract where none exists," *Eisenberg v. Alameda*
2   *Newspapers., Inc.*, 74 Cal. App. 4th 1359, 1391 (1999), "the covenant might be violated if
3   termination of an at-will employee was a mere pretext to cheat the worker out of another
4   contract benefit to which the employee was clearly entitled, such as compensation already
5   earned," *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 353 n.18 (2000).  The elements required
6   to establish a breach of the implied covenant in an employment setting are:  (1) that the
7   plaintiff and defendant "entered into an employment relationship;" (2) that the plaintiff
8   "substantially performed [his] job duties" unless those duties were excused or prevented;
9   (3) "[t]hat all conditions required for [defendant]'s performance" either occurred or were
10  excused; (4) that the defendant engaged in conduct that "prevented plaintiff from receiving
11  the benefits under the contract"; (5) "[t]hat by doing so, [defendant] did not act fairly and
12  in good faith; and" (6) that the plaintiff was harmed by the defendant's conduct.  Judicial
13  Council of California Civil Jury Instructions (2022), CACI No. 2423.

14      Borrello appears to allege two distinct acts gave rise to this cause of action for breach
15  of the implied covenant:  (1) "the fraudulent claim that [Borrello] resigned for personal
16  reasons under [Defendants'] pretext of claiming [Borrello] voluntarily 'quit' his job and
17  [(2)] an unlawful vaccine mandate."[12]   ECF No. 1-2 at 49 (Compl. ¶ 237).  He alleges that

---

[12] Borrello argues in opposition that the breach of the implied covenant was actually that
Defendants used "the pretext of a vaccine mandate as a means to remove employees and
avoid honoring their severance policy that would have applied weeks later when they
announced a mass layoff." ECF No. 13-1 at 21.  Although Borrello alleged facts that might
tend to support such a legal conclusion, *see* ECF No. 1-2 at 35–36 (Compl. ¶¶ 147, 152),
his seventh cause of action plainly alleges that the breach of an implied covenant occurred
when Defendants reported that Borrello voluntarily resigned from his job and imposed the
vaccine mandate, *id.* at 49 (Compl. ¶ 237), without mentioning this alleged pretext of trying
to avoid mass layoffs, *see id.* at 48–54 (Compl. ¶¶ 234–52).  Accordingly, Defendants did
not receive sufficient notice of this alternative allegation for an implied breach of the
covenant, *see Twombly*, 550 U.S. at 545, and the Court does not consider it as part of the
seventh cause of action.

it was fraudulent to report that Borrello had voluntarily resigned when his Letter had specified that he would resign only by tendering a letter of resignation, which he had not tendered. *Id.* (Compl. ¶¶ 238–39). He further alleges that Defendants' vaccine mandate was unreasonable and thus his non-compliance could not be construed as "Constructive Voluntary Leaving." *Id.* at 49–50 (Compl. ¶¶ 240–48) (quoting Cal. Code Regs. Tit. 22 § 1256-1(f)). Except for requests to comply with an employer's "unreasonable order," section 1256-1(f) instructs that an "employee is deemed to have left work voluntarily even though the apparent cause of termination is the employee's discharge by the employer" in situations such as when the employee engages "in a voluntary act or in a course of conduct which leaves the employer no reasonable alternative but to discharge the employee and which the employee knew or reasonably should have known would result in his or her unemployment."

The allegations supporting Borrello's seventh cause of action are facially insufficient to prove a breach of the implied covenant of good faith and fair dealing. As discussed in Section III.B.3, *supra*, the facts alleged in the Complaint suggest that Borrello was asked to take minor actions as a condition of his employment—become vaccinated against COVID-19 or request a medical or religious accommodation in the alternative and upload documentation supporting that he had completed either of those tasks. Although Borrello makes clear that he believed the COVID-19 vaccine posed an unreasonable risk to his health and safety, *see* ECF No. 1-2 at 49–50 (Compl. ¶¶ 243, 245), because he failed to comply with the relatively simple steps for requesting a medical or religious accommodation, Borrello fails to allege the third element necessary to support a claim for breach of good faith and fair dealing, CACI No. 2423. Furthermore, the fact that the United States Supreme Court did not stay the OSHA COVID-19 policy at issue until January 13—

three days after the deadline for Borrello to have uploaded either his vaccination or accommodation documents—undercuts Borrello's averments that Defendants were not acting in good faith.  *See Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., OSHA*, 142 S. Ct. 661 (2022).  The Court does not reach the remaining elements of the claim.  *See* CACI No. 2423.

Defendants' motion to dismiss Borrello's seventh cause of action is hereby GRANTED.  Although the Court entertains doubts that the pleading deficiencies for this cause of action, the Court declines to conclude that such a task would be impossible.  The Court therefore grants Borrello leave to amend his complaint as to this cause of action.

### 5.    Eighth and ninth causes of action:  fraud

"The California Civil Code recognizes causes of action for 'actual fraud' . . . ." *Metro. Bus. Mgmt., Inc. v. Allstate Ins. Co.*, 282 F. App'x. 544, 546 (9th Cir. 2008); *accord Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 414 (1992).  Under California Civil Code section 1572, actual fraud is defined as

> any of the following acts, committed by a party to the contract, . . . with intent to deceive another party thereto, or to induce him to enter into the contract:
>
> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
>
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
>
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
>
> 4. A promise made without any intention of performing it; or,
>
> 5. Any other act fitted to deceive.

"To establish actual fraud . . . , the plaintiff must show that the defendant, with intent to deceive or induce the plaintiff to enter into a contract, (1) misrepresented a material fact,

30

(2) suppressed facts it knew or believed to be true, or (3) made a promise intending not to perform it." *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 509 (9th Cir. 1989).

Borrello's eighth cause of action appears to allege that Defendants committed fraud within the meaning of section 1572 in three ways: (1) they fraudulently "claim[ed] [he] had voluntarily quit his job, but the evidence shows he was discharged by" Defendants, ECF No. 1-2 at 55 (Compl. ¶ 255); (2) they "initiat[ed] [Borrello]'s termination according to [his] alleged refusal to comply with an unconstitutional, forced disclosure of his medical status," *id.* (Compl. ¶ 256); and (3) they "us[ed] the pretext of a vaccine mandate to compel resignations," *id.* at 56 (Compl. ¶ 263). Borrello appears to allege that he relied on these allegedly fraudulent claims by sending Defendants his January 24 email and Letter, which they ignored and proceeded to treat him as though he had voluntarily quit. *Id.* at 55 (Compl. ¶ 257). His ninth cause of action additionally alleges that Defendants committed a fourth act of fraud under section 1572(5) when they negligently misrepresented "that the COVID-19 vaccines were safe and effective and [made] statements like 'it is the right thing to do' without exercising proper due diligence to affirm the truth of their assertions." *Id.* at 56–57 (Compl. ¶ 269). Borrello appears to simultaneously allege both that he relied on Defendants' assertions about the safety and efficacy of the COVID-19 vaccine, *see id.* at 57 (Compl. ¶¶ 274–76), and that he rejected these assertions, *id.* (Compl. ¶ 274). His January 24 Letter and Attachment make clear that he did not rely on Defendants' assertions about the safety or efficacy of the vaccine.

Defendants argue that the eighth cause of action is legally insufficient because Borrello "fails to plead which of the five acts of fraud set forth in section 1572 he claims was committed," and because "no express contract or explicit promise exists, so the section is inapplicable." ECF No. 5-1 at 23. They argue that his ninth cause of action fails because, again, "no express contract exists" and Borrello fails to allege that he "relied upon the supposedly fraudulent misrepresentation." *Id.* at 24. Indeed, Borrello does not point to

any contract into which Defendants deceived or induced him to enter.  He argues that the parties had an implied contract via their employment relationship and Defendants' "virtual policy manual," ECF No. 1-2 at 13 (Compl. ¶¶ 31–33); ECF No. 13-1 at 24, but fails to explain how the purportedly fraudulent actions, *see* ECF No. 1-2 at 55–57 (Compl. ¶¶ 255, 256, 263, 269), induced him to enter into either of these contracts, *see* ECF No. 13-1 at 23–26).  Thus, even assuming that Defendants deceptively or in bad faith committed the complained-of fraudulent acts, Borrello's failure to allege any contract by which he was induced to assent because of the acts makes these claims insufficient as a matter of law. *See* Cal. Civ. Code § 1572 (enacted under Chapter 3, Title 1, Part 2, concerning consent to formation of contracts); *Miller*, 885 F.2d at 509.

The Court GRANTS Defendants motion to dismiss Borrello's eighth and ninth causes of action.  At this time, the Court is not prepared to say it is impossible for the pleading deficiencies to be cured and thus GRANTS Borrello leave to amend his complaint as to the eighth and ninth causes of action.

### C.   Borrello Fails To Raise Specific Allegations Against Some Defendants.

Borrello filed his Complaint against the seven Defendants and often refers to them collectively as "defendants" throughout the Complaint.  He alleges that Respironics California was his employer and "a subsidiary of Philips," but does not specify to which of the four entities containing the name "Philips" Respironics California is a subsidiary ECF No. 1-2 at 7 (Compl. ¶ 2.a).  Similarly, he alleges that Respironics Novametrix "is a subsidiary of Philips," without specifying which Philips entity or entities and without explaining its relationship to Respironics California.  *Id.* (Compl. ¶ 2.b).  As for Defendant Rocha, Borrello alleges only that Rocha was the Chief Market Leader of North America and Chief Executive Officer of Philips Holding USA Inc., *id.* at 8 (Compl. ¶ 2.g); that Rocha signed the October 27 email introducing the new COVID-19 policy, *id.* at 15 (Compl. ¶ 46); and that Rocha was an addressee in Borrello's January 24 email and Letter,

*id.* at 28 (Compl. ¶ 114).  He alleges that all defendants are liable for each cause of action under either direct liability, respondeat superior liability, or alter ego liability.  *Id.* at 9 (Compl. ¶¶ 3, 6).  Each of Borrello's ten causes of action appear to be against all Defendants without specifying any particular defendant's actions that give rise to any particular cause of action.  *See, e.g.*, *id.* at 39–41 (Compl. ¶¶ 178–89) (referring to "defendant" and "defendants").

Defendants argue that, aside from Borrello's direct employer—Respironics California—Borrello failed to allege any facts against any Defendant to support any cognizable legal theory.  ECF No. 5-1 at 25.  They argue that all other defendants should be dismissed from the Complaint.  Borrello responds that nobody at Respironics California "had full knowledge or control over [his] termination," and thus the other Defendants are liable under theories of alter ego and respondeat superior liability.  ECF No. 13-1 at 26–30.

Federal Rule of Civil Procedure 8(a)(2) requires that the plaintiff set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2) requires that the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "To survive a motion to dismiss, a complaint must contain a sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when it contains factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.*, "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation," *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

33

1    "Under the theory of respondeat superior, employers are vicariously liable for

2    tortious acts committed by employees during the course and scope of their employment."

3    *Vebr v. Culp*, 241 Cal. App. 4th 1044, 1055 (2015).  "To recover on an alter ego theory, a

4    plaintiff need not use the words 'alter ego,' but must allege sufficient facts to show a unity

5    of interest and ownership, and an unjust result if the corporation is treated as the sole actor."

6    *Leek v. Cooper*, 194 Cal. App. 4th 399, 415 (2011).

7        Borrello has failed to raise specific allegations for direct liability against the non-

8    employer defendants sufficient to give them "fair notice of what the . . . claim is and the

9    grounds upon which it rests."  *See Twombly*, 550 U.S. at 545.  Furthermore, there do not

10   appear to be any master-agent relationships at issue such that respondeat superior liability

11   would apply to any Defendant other than Respironics California, and Borrello makes only

12   conclusory allegations that each defendant is the alter ego of the other such that this

13   pleading standard also is not met.  For these reasons, Defendants' motion to dismiss

14   Respironics Novametrix, LLC; Philips North America LLC; Philips RS North America

15   LLC; Philips DS North America LLC; Philips Holding USA, Inc.; and Vitor Rocha is

16   GRANTED.  However, the Court grants Borrello leave to amend his Complaint to plead

17   with more specificity how these other defendants may be liable.

18      **D.   Punitive Damages**

19       "In an action for the breach of an obligation not arising from contract, where it is

20   proven by clear and convincing evidence that the defendant has been guilty of oppression,

21   fraud, or malice, the plaintiff, in addition to the actual damages, may recover" punitive

22   damages.  Cal. Civ. Code § 3294(a); *Smith v. Superior Court*, 10 Cal. App. 4th 1033, 1041

23   (1992).  Employers are not liable for punitive damages "based upon acts of an employee

24   of the employer, unless the employer . . . ratified the wrongful conduct for which the

25   damages are awarded or was personally guilty of oppression, fraud or malice."  Cal. Civ.

26   Code § 3294(b).

27

28

34

1       Defendants argue that Borrello "fails to allege specific facts that Rocha or any other

2   managing agent of any Defendant entity engaged in fraud, oppression, or despicable

3   conduct in willful and conscious disregard of his rights." ECF No. 5-1 at 26. They reason

4   that his claim for punitive damages should thus be dismissed. *Id.* Borrello argues in

5   response, without citing to the Complaint or attached exhibits, that both Defendants'

6   actions and the harm caused to him and his wife by those actions warrant punitive damages.

7   ECF No. 13-1 at 30–31.

8       Defendants are correct that Borrello's Complaint fails to specifically allege any

9   actions by an employee warranting punitive damages which were ratified by any

10  Defendant. *See* Cal. Civ. Code § 3294(b). He also did not allege that Rocha personally

11  engaged in any oppressive, fraudulent, or malicious behavior under section 3294. Instead,

12  Borrello's Complaint contains general statements that the "acts committed by defendants

13  were oppressive, malicious, despicable and" therefore entitle him to punitive damages.

14  *E.g.*, ECF No. 1-2 at 41 (Compl. ¶ 189). Even under the causes of action alleging fraud

15  and deceit, it is unclear if Borrello is accusing one of the Defendants' employees of the

16  actions that could warrant punitive damages, and if so, how any particular Defendant

17  ratified that action. *See, e.g.*, *id.* at 56 (Compl. ¶ 263) (alleging "defendant," without

18  specifying which defendant, used the vaccine policy as a pretext to compel resignations).

19  Accordingly, the Court GRANTS Defendants' motion to dismiss Borrello's claims for

20  punitive damages from the Complaint, with leave to amend.

21  **IV.   CONCLUSION**

22      Defendants' motion to dismiss Borrello's ten causes of action; the uninvolved entity

23  defendants; Defendant Vitor Rocha; and Borrello's request for punitive damages is

24  **<u>GRANTED</u>**. Borrello is granted LEAVE TO AMEND his complaint as to each cause of

25  action, the dismissed defendants, and the punitive damages. An amended Complaint, if

26  any, shall be filed within **<u>45 days</u>** of the date of this order.

27

28

23-cv-580-GPC-WVG

1    **IT IS SO ORDERED.**

2    Dated:  September 14, 2023

3                                                        Hon. Gonzalo P. Curiel

4                                                        United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          36

28