UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE BORRELLO,<br><br>                                    Plaintiff,<br><br>v.<br><br>RESPIRONICS CALIFORNIA, LLC;<br>RESPIRONICS NOVAMETRIX, LLC;<br>PHILIPS NORTH AMERICA LLC;<br>PHILIPS RS NORTH AMERICA LLC;<br>PHILIPS DS NORTH AMERICA LLC;<br>PHILIPS HOLDING USA INC.; VITOR<br>ROCHA,<br><br>                                    Defendants. | Case No.:  23-cv-580-GPC-VET<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART MOTION TO<br>DISMISS**<br><br>**[ECF No. 26]** |

Before the Court is the second motion to dismiss Plaintiff Mike Borrello's amended complaint ("AC"), ECF No. 22, by Defendants Respironics California, LLC; Respironics Novametrix, LLC; Philips North America LLC; Philips RS North America LLC; Philips DS North America LLC; Philips Holding USA Inc; and Vitor Rocha (collectively "Defendants"), ECF No. 26.  Defendants move to dismiss the AC in its entirety for failing to state a claim upon which relief can be granted under Federal Rule of

1

Civil Procedure ("Rule") 12(b)(6).  ECF No. 26-1.  Plaintiff responded and moved to strike, ECF No. 29, and Defendants filed a reply, ECF No. 30.  The Court heard oral argument on March 8, 2024.  ECF No. 34.

For the reasons that follow, Defendants' Motion to Dismiss is hereby GRANTED IN PART and DENIED IN PART and limited leave to amend the AC is GRANTED.

### A. BACKGROUND

### I. Plaintiff's Employment with Respironics

In December 2012, Plaintiff Mike Borrello accepted an at-will employment offer from Defendant Respironics California, LLC ("Respironics"), a subsidiary of Philips.[1] ECF No. 22 at 5 ¶ 2(a), 10 ¶ 11, 173.[2]  He started working at Respironics as an engineer in January 2013.  *Id.* at 10 ¶¶ 10-11.

Though Respironics did not have an employee handbook, Plaintiff alleges that there were a series of policies conditioning his employment that constituted "an effective company policy manual," *id.* at 14 ¶ 30, including the Philips North America Severance Plan, *id.* at 14 ¶ 31, 190-204.  The Severance Plan, attached to the AC, explains that Philips North America LLC has "sole discretion" to determine employee eligibility for severance benefits and that "[s]everance benefits . . . are not a right accrued by any employee by virtue of employment[.]"  *Id.* at 192.  "Employees who voluntarily resign" are ineligible for severance.  *Id.*

### 2. Philips' New Vaccine Policy

Plaintiff's employment ended roughly nine years later in February 2022, shortly after Philips implemented a mandatory COVID-19 vaccine policy.  *Id.* at 36 ¶ 129.  On October 27, 2021, Philips emailed a "COVID-19 Update" to its North American

[1] Like Plaintiff, the Court uses "Philips" generally to refer to the overall corporate entity, instead of to a particular Defendant.

[2] Page numbers are based on the CM/ECF pagination.

employees.  *Id.* at 16 ¶ 46, 179-80.  The email was signed by the Philips CEO and the Chief Market Leader, Defendant Vitor Rocha.  *Id.*  The email instructed that "[e]ffective December 8, 2021, employees based in the U.S. are required to be vaccinated against COVID, as a [new] condition of employment at Philips."  *Id.* at 16 ¶ 46 (alteration in original).  Employees "were required to provide proof of vaccination by January 10, 2022 or have requested and qualified for a reasonable accommodation."  *Id.* at 19 ¶ 59.  Otherwise, the employees would "be considered a 'voluntary quit' on February 4, 2022."  *Id.*  The email explained that this policy change was due in part to a federal "mandate for all federal workers to be vaccinated against COVID, which extends to federal contractors like Philips."  *Id.* at 16 ¶ 46, 179-80.

Plaintiff received another email from Philips on November 8 which gave more specific information about the new COVID-19 vaccination policy.  *Id.* at 26 ¶ 96-97, 176-77.  All "U.S.-based employees" were required to "[u]pload proof of vaccination, or reasonable accommodation qualification [to a Human Resources portal ("HR Portal")] by January 10, 2022," and employees who failed to "upload[] the required documentation by January 10, 2022, or request[] and qualif[y] for a reasonable accommodation, [would] be considered out of compliance[.]"  *Id.*  The email again stated that any employees who had not complied would "be considered a voluntary quit on February 4, 2022."  *Id.*  The email also included a link to a Frequently Asked Questions ("FAQ") page about the new COVID-19 policy and instructed employees to contact their "Human Resources manager with additional questions."  *Id.* at 176-77.

The FAQ page addressed much of the information already disclosed via email in greater detail.  *Id.* at 183-88, 264-70.  In relevant parts, the FAQ page explained that "[e]mployees with a sincerely held religious belief and/or disability impacting their ability to obtain the COVID vaccine should request a reasonable accommodation via the HR Portal."  *Id.* at 183 ("via the HR portal" appears to have been hyperlinked).  The last

3

section of the FAQ page was titled "Reasonable Accommodation," and encouraged employees to consult with their physician about any "questions or concerns about risk, allergic dispositions, pregnancy or other medical situations." *Id.* at 187.  It explained that "[t]he reasonable accommodation process is an interactive dialogue between employee, direct manager and Human Resources." *Id.*  The FAQ also explained that this vaccine policy applied, as a condition of employment, "to all U.S.-based Philips employees," even those who worked remotely. *Id.* at 184.

On January 6 and 10, 2022, Plaintiff received nearly identical emails reminding him about the requirement that he upload proof of vaccination or request an accommodation by January 10. *Id.* at 212-17.  The emails explained how employees "requiring a medical disability or religious exemption" could submit a request for a reasonable accommodation. *Id.* at 212.  Sometime after the January 6 email, Plaintiff alleges that he visited the HR portal and that the only options available for him to select were: "(1) Approved Reasonable Accommodation, (2) fully vaccinated and don't want to share my information with health advocate, (3) fully vaccinated and want to share my information with health advocate, and (4) partially vaccinated." *Id.* at 29-30 ¶ 108, 297-98.  Plaintiff did not think these four options adequately applied to him, and so he planned "to write his own letter outlining specific details of why [he] chose not to disclose his medical information." *Id.* at 30 ¶¶ 108-09.

On January 13, 2022, the U.S. Supreme Court held that the Occupational Safety and Health Administration ("OSHA") likely did not have authority to enact an emergency rule requiring that employees for federal contractors receive the COVID-19 vaccine, *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022), the federal mandate referred to in Defendants' first email, ECF No. 22 at 16 ¶ 46, 179-80.  OSHA withdrew the emergency standard as an enforceable emergency temporary standard, but not as a proposed rule.  COVID-19 Vaccination and

4

Testing; Emergency Temporary Standard, 87 Fed. Reg. 3928-29 (2022).  OSHA continued "to strongly encourage the vaccination of workers[.]"  *Id.* at 3929.

On January 20, 2023, Plaintiff received an email from a human resources ("HR") employee informing him that Philips' records indicated he had not complied with the January 10 deadline to upload his vaccine status or reasonable accommodation documents to the HR portal.  *Id.* at 31 ¶ 113, 224.  The email included a table with seven options from which the employee could select and the corresponding employee and manager "action."  *Id.* at 224.  For example, among other options, an employee could select that they were not fully vaccinated and planned "to request a medical or religious accommodation," or that they did "not plan to comply with Philips' COVID-19 Vaccine Policy to become Fully Vaccinated."  *Id.*  Plaintiff alleges that "[t]he only option [he] believed he could comply with" was the one stating that he did not plan to comply with the policy and so, as instructed, he notified his manager of his intent.  *Id.* at 31 ¶¶ 113-14.

### 3. Plaintiff's Response to The Vaccine Policy

Plaintiff responded to the January 20 email on January 24 via email to his manager, HR, Defendant Rocha, and the Philips CEO, as well as via hard copies of his letter to Rocha, HR, and the Philips CEO.  *Id.* at 31 ¶ 114; *see also id.* at 226-71 (letter and other attachments).  The four-page letter and email attachment was titled "Request for 'vaccine' status—Notification of Consent and Cease and Desist."  *Id.* at 226.  The letter described the vaccine policy as "an unwanted medical treatment that intrude[d] on [Plaintiff's] medical freedom of choice" and described the "threaten[ed]" employment termination "as retaliation if [he] refuse[d] to comply."  *Id.* at 226.  The letter asserted that the emails from Philips about the vaccine policy, starting back in October 2021, "constitute[d] a record of persistent harassment and unlawful coercion to submit to a medical treatment under threats of retaliation" for failure to comply.  *Id.* at 227.  It also warned that Philips' vaccine policy could be in breach of the implied

covenant of good faith and fair dealing and referred the U.S. Supreme Court's decision regarding the OSHA emergency rule, described above. *Id.* at 227-28.

In the letter, Plaintiff acknowledged that Philips offered an alternative to receiving the vaccine in the form of a "reasonable accommodation," but assured the reader that he had no disabilities to which he believed reasonable accommodations would apply. *Id.* at 118. The letter did not mention anything about Plaintiff seeking a religious accommodation. *Id.* at 226-29 (absence). Instead, it alleged that his vaccination status was "private medical information," not required to be disclosed by law, which cannot be legitimately used by an employer to discriminate against employees or to terminate employment." *Id.* at 228-29. Further, Plaintiff asserted that he had no intention of quitting his job and that "until [he] state[d] otherwise by a signed letter of resignation," Philips would be the "moving party" behind any termination. *Id.* Finally, Plaintiff ended his letter with a "friendly warning . . . to stop emailing or posting through the company intranet, requests for medical status, threats of termination, and to stop all further actions attempting to manipulate me to play games with my health." *Id.* at 229.

Attached to the letter was what Plaintiff referred to as an "affidavit." *Id.* at 231. This attachment contained a list of nine reasons in support of Plaintiff's position that "[n]o person should ever be coerced to disclose medical information or forced to receive unwanted medical procedures under threat, including the threat of losing employment[.]" *Id.* The last reason is Plaintiff's "*spiritual* wellbeing, and right to remain the essence of the person [he] was born to be; to maintain [his] sacred genetic constitution inherited from [his] parents, and the right of respect by others to do no harm to [his] spiritual being. [He is] not a slave." *Id.* at 231 (emphasis in original). Plaintiff alleges in his AC that this represents his sincerely held religious belief. *Id.* at 32 ¶ 117.

Within the attachment, Plaintiff also expressed his "deep[] concern[]" and "fearful belief that receiving any COVID-19 vaccine could adversely affect [his] condition of

6

excellent health." *Id.* at 232.  He then explained that his review of data from the Vaccine Adverse Event Reporting System ("VAERS") and other scholarly works demonstrated that the COVID-19 vaccines were unsafe.  *Id.* at 232-34; *see also id.* at 238-60 (gathering sources and stating conclusions).  In addition, Plaintiff pointed to various cases from the U.S. Supreme Court which he interpreted as supporting his position that a private employer could not condition employment upon obtaining the COVID-19 vaccine.  *Id.* at 234-35.  After stating that COVID-19 vaccines are different from traditional vaccines because "[t]hey are a therapy that messes with the genetic machinery of somatic cells," Plaintiff explained that "[w]hile some may use this fact to argue a religious exemption (. . . Pfizer vaccines are indeed manufactured using human fetal tissue), my primary concern rather considers possible long-term effects that cannot be predicted by any computer simulation or paper analysis." *Id.* at 236.  Nowhere in the letter or attachment did Plaintiff request a religious accommodation.  *See id.* at 231-60 (absence).

### 4. Plaintiff's Final Days with Respironics

On January 31, 2022 Plaintiff's manager responded to Plaintiff, confirming that, pursuant to Plaintiff's email and conversations they had, Plaintiff did "not plan to come into compliance with" Philips' vaccination policy, which was a "condition of [his] employment." *Id.* at 33 ¶ 119, 290.  Accordingly, the manager instructed Plaintiff on how to prepare for his final days of employment and what to do should he change his position on the vaccine policy or have questions.  *Id.* at 290.  Plaintiff recalls the manager telling him around this time that "the discharge of employees for not complying with [the] COVID-19 vaccine mandate was largely an operation managed by corporate personnel" without any room for input or decision-making by local management.  *Id.* at 34 ¶ 121.

Upon meeting virtually with HR, Plaintiff learned that the cause for his termination would be recorded as "Resignation – for personal reasons." *Id.* at 34 ¶ 122.  Plaintiff

replied that "this reason and cause was not correct," and that his letter had made clear he was not resigning and would only resign via letter of resignation, which he had not submitted. *Id.* The HR representative recalled having seen Plaintiff's letter, "but had not fully read it." *Id.* at 35 ¶ 125. Plaintiff alleges that she "had no interest in discussing plaintiff's reasons for not complying . . . [and] no further comment to offer regarding accommodating plaintiff's reasons not to comply[.]" *Id.* at 35 ¶ 126. Nobody from Philips responded to the Plaintiff's letter, and Plaintiff "believes that defendants never read [it.]" *Id.* at 36 ¶ 128, 38 ¶ 140.

"On February 4, 2022 plaintiff was discharged from his employment with Philips," with the record of termination recorded as "resignation." *Id.* at 36 ¶ 129. Plaintiff asserts that the "more accurate reason for [his] discharge should have been either insubordination or misconduct." *Id.* at 36 ¶ 134. Because Philips reported that Plaintiff voluntarily resigned, he was ineligible for severance pay, three months of health insurance, and unemployment benefits. *Id.* at 41 ¶¶ 155-57. Plaintiff alleges that, after termination, he had trouble finding new employment. *Id.* 43-44 ¶¶ 164-74. However, he was able to successfully appeal the initial denial of unemployment benefits; an administrative law judge found that Philips terminated him and that he did not quit. *Id.* at 41-42 ¶¶ 156-62, 319-21.

### 5. Philips' Mass Layoffs in March 2022

In late March 2022, about a month and a half after Plaintiff's last day, Philips North America LLC notified the California Employment Development Department ("EDD") that over the next year or two it planned to lay off approximately 130 employees from its Carlsbad facility and transfer the remaining roughly 78 employees to another site. *Id.* at 38 ¶ 144, 300-02 (notice provided on March 26, 2022); *id.* at 36 ¶ 129 (Plaintiff discharged on February 4, 2022). The AC asserts that the majority of the

roughly 78 remaining employees were terminated by March 2023 rather than transferred. *Id.* at 38-39 ¶ 145.

Plaintiff alleges that Philips used the vaccine mandate as a pretext for the "convenient opportunity to discharge plaintiff, and perhaps other employees across North America that refused to comply with the vaccine mandate, without having to honor the company's severance policy." *Id.* at 39-40 ¶¶ 147-52. The AC contends that "significant economic losses," including drop in stock price and loss of major contracts, prior to the announcement of the vaccine mandate "establishes a compelling motive to downsize operations by any means; to reduce forces to compensate for significant economic losses." *Id.* at 40 ¶ 152; *see also id.* at 304-12 (timeline created by Plaintiff).

### 6. Plaintiff's Lawsuit

In February 2023, Plaintiff filed a Complaint in the Superior Court of California. ECF No. 1-2 at 5. In March 2023, Defendants removed the matter to this Court under federal diversity and federal question jurisdiction. ECF No. 1 at 2-8. Defendants moved to dismiss the complaint for failure to state a claim, ECF No. 5, and the Court granted the motion in full with leave to amend, ECF No. 20. Plaintiff filed an amended complaint on December 8, 2023. ECF No. 22. Defendants filed a motion to dismiss the amended complaint, and Plaintiff responded and Defendants replied. ECF Nos. 26, 29-30.

In the AC, Plaintiff alleges ten causes of action, each against all Defendants:

(1) violation of civil rights under California Civil Code §§ 43, 1708;
(2) violation of informational and autonomous privacy rights under Article I, Section 1 of the California Constitution;
(3) religious discrimination in violation of California Government Code § 12940(a);
(4) failure to prevent discrimination in violation of California Government Code § 12940(k);
(5) unlawful retaliation under California Government Code § 12940(*l*)(4);
(6) failure to accommodate religious belief in violation of California Government Code § 12940(*l*)(1);
(7) breach of the implied covenant of good faith and fair dealing;

(8) direct fraud under California Civil Code § 1572;

(9) negligent misrepresentation under California Civil Code § 1572(5); and

(10) wrongful termination in violation of public policy under common law.

Plaintiff requests (1) monetary damages for lost wages, severance benefits, and health insurance premiums, (2) attorney's fees and costs for his own time, (3) over $1 million in punitive damages, and (4) a letter of apology. *Id.* at 170-71.

## B. MOTION TO DISMISS

### 1. Pleading Standards

Rule 12(b)(6) permits a court to dismiss a complaint when the plaintiff has failed "to state a claim upon which relief can be granted." "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Rule 8(a)(2) requires that the plaintiff set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court has interpreted Rule 8(a)(2) as requiring that the complaint "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

"To survive a motion to dismiss, a complaint must contain a sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is facially plausible when it contains factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "All reasonable inferences must be drawn in

favor of the non-moving party." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010).

"Generally, a court may not consider material beyond the complaint in ruling" on a motion to dismiss. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). "However, material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). Although the court must accept as true all material facts alleged in a complaint in this posture, it need not accept matters that are contradicted by exhibits to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Courts "liberally construe[]" documents filed pro se, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). But in giving liberal interpretation to pro se complaints, a court "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).[3]

---

[3] Plaintiff has cited out-of-circuit cases in his Response that do not support any individual cause of action but, instead, bolster his general argument that the "vaccine mandate was unnecessary, unreasonable, lacked authority and was arbitrary and capricious." ECF No. 29-1 at 6, 9-11. These cases involve causes of action different from the ones in the AC. *See Garvey v. City of New York*, 180 N.Y.S. 3d 476, 483 (2022) (holding that under New York law, on judicial review of an agency action, New York City's vaccine mandate was arbitrary and capricious because it treated similarly-situated unvaccinated people differently); *Med. Pros. for Informed Consent v. Bassett*, 197 N.Y.S. 3d 785, 787 (2023) (dismissing as moot an appeal of a decision holding that the New York State Department of Health did not have authority to issue their vaccine mandate). Some references were not judicial decisions at all, but rather quotes from the parties' briefs or settlement outcomes. See ECF No. 29-1 at 10-11 (quoting briefing by plaintiffs in other vaccine mandate cases). Because these cases and references do not implicate Plaintiff's causes of action, the Court does not find them persuasive or use them in its analyses.

1  "If a complaint is dismissed for failure to state a claim, leave to amend should be
2  granted unless the court determines that the allegation of other facts consistent with the
3  challenged pleading could not possibly cure the deficiency," i.e. where "the amendment
4  would be futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992)
5  (internal quotation marks and citation omitted).

### 2. First Cause of Action: California Constitution Article 1, § 1 & California Civil Code §§ 43, 1708

Plaintiff first alleges that Defendants "violated plaintiff's constitutional and civil
rights under Article 1, Section 1 of the California Constitution," ECF No. 22 at 62 ¶ 238,
which states that "[a]ll people are by nature free and independent and have inalienable
rights." Cal. Const. art. I § 1. In the "Legal Arguments" section of the AC, Plaintiff
makes general statements regarding the rights he alleges Defendants violated and
references a variety of statutes. *See, e.g.*, ECF No. 22 at 64 ¶ 240 ("Employers should . . .
explore reasonable alternatives to respect and protect the autonomy and rights of their
employees."); *id.* at 66-67 (referencing the California Medical Consent Law, restrictions
on impersonating a medical professional, and Fair Employment and Housing Act
regulations). However, in his "Alleged Facts as They Relate to the Law" section, he
clearly asserts causes of action under Cal. Civ. Code §§ 43, 1708, listing each element of
the claims. *Id.* at 69, 76.

Defendants argue that Plaintiff's legal arguments in this cause of action are so
chaotic and confusing that the AC fails to state a cognizable legal theory. ECF No. 26-1
at 15. The Court would certainly agree to the extent Plaintiff intends to state a cause of
action *other than* under Cal. Civ. Code §§ 43, 1708. *See Twombly*, 550 U.S. at 555 (a
complaint must provide "fair notice of what the . . . claim is and the grounds upon which
it rests." (cleaned up)). Nonetheless, the AC has made it very clear that Plaintiff is
alleging violations of Cal. Civ. Code §§ 43, 1708, such that Defendants had fair notice of
these claims. *See* ECF No. 22 at 69-80.

First, § 43 states that "every person has, subject to the qualifications and restrictions provided by the law, the right of protection from bodily restraint or harm," language which codifies the common law torts of assault, battery, and invasion of privacy. *Meyer v. Cnty. of San Diego*, No. 21-CV-00341, 2021 WL 4924836, at *10 (S.D. Cal. Oct. 21, 2021). The section does not independently impose a duty. *See Garcia v. City of Sanger*, No. CV-F-09-359, 2009 WL 1362693, at *12 (E.D. Cal. May 14, 2009). Thus, a claim under § 43 is simply a tort claim for assault, battery, or invasion of privacy.

Plaintiff has not plead the elements of battery or assault in his first cause of action. Instead, the AC seems to argue that by making the COVID-19 vaccine a condition of employment, Defendants had a duty to ensure that it was safe, which they breached, causing Plaintiff harm that was tantamount to bodily harm. ECF No. 22 at 69-74. Battery is an unlawful and harmful touching and assault is unlawful intent to inflict immediate injury. *Bolbol v. Feld Ent., Inc.*, No. C 11-5539, 2012 WL 5828608, at *7 (N.D. Cal. Nov. 15, 2012) (defining battery and assault under California law in the context of Cal. Civ. Code § 43). Plaintiff does not allege that Defendants physically harmed him or threatened an imminent harmful contact.[4]

However, liberally interpreting his AC due to his pro se status, the Court understands him to allege a common law invasion of privacy violation through § 43 and the facts and elements laid out in his second cause of action for a constitutional invasion of privacy. *See Erickson*, 551 U.S. at 94 (explaining that pro se complaints should be interpreted liberally). The Court will address this common law invasion of privacy claim

---

[4] Plaintiff contends that conditioning employment on becoming vaccinated was a threat of bodily harm. ECF No. 22 at 72 ¶ 267. But the threat was not one of bodily harm but of the loss of employment, and, anyway, the threat was not imminent and therefore could not be assault.

along with his second cause of action for a violation of the constitutional right to privacy. As such, Plaintiff fails to state a cause of action under § 43 except as to the common law invasion of privacy claim discussed in the following section.

Second, § 1708 declares broadly that "[e]very person is bound . . . to abstain from injuring the person or property of another, or infringing upon any of his or her rights." But as Defendants argue, ECF No. 26-1 at 17, there is no private right of action under this § 1708. *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1308 (S.D. Cal. 2003); *Soriano v. Countrywide Homes Loans, Inc.*, No. C 09-02415, 2010 WL 11590680, at *10 (N.D. Cal. Feb. 5, 2010); *see also Katzberg v. Regents of Univ. of California*, 29 Cal. 4th 300, 328 (2002) ("[S]ection 1708 . . . states a general principle of law, but it hardly provides support for the adoption of the . . . proposition that a violation of . . . the California Constitution gives rise to a direct cause of action for damages outside the parameters of . . . tort law[.]").  The Court will not create an implied right of action, as Plaintiff contends it should, where other courts have explicitly found there is not one.  ECF No. 29-1 at 19.  That courts have recognized a private right of action for other sections of the California code is of no import.  *See id.* at 20.  There is therefore no cause of action for Plaintiff under § 1708.

Thus, Plaintiff has failed to state a claim under the first cause of action.  The Court GRANTS the motion to dismiss with prejudice except as to the common law invasion of privacy claim, for which it DENIES the motion for the reasons discussed below.

### 3. Second Cause of Action: Invasion of Privacy under the California Constitution and Common Law

Plaintiff's second cause of action alleges that Defendants violated his right to privacy under the California Constitution.  ECF No. 22 at 81.  As discussed above, the Court also interpets Plaintiff to allege a violation of the common law tort of invasion of

*23-cv-580-GPC-VET*

privacy.  "Because of the similarity of the tests, courts consider the claims together[.]"  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).

Article 1, section 1 of the California Constitution recognizes that "[a]ll people . . . have inalienable rights," including the right to "pursu[e] and obtain[] safety, happiness, and privacy."  "[T]he Privacy Initiative in article I, section 1 of the California Constitution creates a right of action against private as well as government entities."  *Hill v. Nat'l Coll'ate Athletic Ass'n*, 7 Cal. 4th 1, 20 (1994).  The elements necessary to maintain a "cause of action for violation of the state constitutional right to privacy" are: (1) "the identification of a specific, legally protected privacy interest"; (2) "a reasonable expectation of privacy on plaintiff's part"; and (3) the "[s]erious invasion of [a] privacy interest."  *Id.* at 35-36.  Similarly, the elements of a common law invasion of privacy claim include (1) intentional intrusion into a place or matter as to which the plaintiff has a reasonable expectation of privacy and (2) the intrusion was highly offensive.  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).[5]

Legally protected privacy interests include "interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy')[,] and . . . interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')."  *Hill*, 7 Cal. 4th at 35.  "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms."  *Id.* at 37.  And "[a]ctionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms

---

[5] While courts treat the common law and constitutional claims for invasion of privacy as separate claims, they are often analyzed simultaneously.  *See, e.g.*, *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012).

23-cv-580-GPC-VET

underlying the privacy right." *Id.*  A defendant may defeat a state constitutional privacy claim either by "negating any of the three elements" or by showing "that the invasion of privacy is justified because it substantially furthers one or more countervailing interests." *Id.* at 40.

Plaintiff alleges that Defendants violated Plaintiff's informational and autonomous privacy.  ECF No. 22 at 86 ¶ 302.  The AC explains that "Plaintiff's autonomous privacy rights were violated since he was restricted by defendants to freely make personal choices without interference by threat of job loss" and that "Plaintiff's [i]nformational privacy rights were also violated by defendants when they demanded to control, collect and use plaintiff's personal medical and religious information to decide his eligibility for continued employment." *Id.* at 87 at ¶ 304.   There is no dispute that these interests meet the first prong of the test and are legally protected privacy interests.  *Love v. State Dep't of Educ.*, 29 Cal. App. 5th 980, 993 (2018) ("A person's medical history and information and the right to retain personal control over the integrity of one's body is protected under the right to privacy.").  Defendants challenge only the third prong: whether these interests constitute a *serious* invasion of privacy.  ECF No. 26-1 at 17-19.  Defendants contend that they did not force Plaintiff to send his January 2022 letter or to get the vaccine; they gave all employees the options of vaccinating, obtaining a reasonable accommodation, or voluntarily quitting.  *Id.*  And therefore their intrusion on Plaintiff's privacy was effectively de minimus.

 The severity of the invasion of the privacy typically involves mixed questions of law and fact inappropriate on a motion to dismiss unless "the undisputed material facts show an insubstantial impact on privacy interests." *Hill*, 7 Cal. 4th at 40.  Courts that have reviewed vaccine mandates on motions to dismiss are divided in their conclusions.  Some, following *Hill*'s framework more rigidly, found that the seriousness of the alleged invasion of privacy is not a suitable question for a motion to dismiss.  *See LA Cnty. Free*

*Found. v. County of Los Angeles*, No. 2:22-cv-00787, 2022 WL 18278624, at *4 (C.D. Cal. June 1, 2022) (declining on a motion to dismiss "to resolve mixed questions of fact and law" as to whether a county employer's vaccine policy constituted a serious invasion of privacy); *Firefighters4Freedom v. City of Los Angeles*, No. B320569, 2023 WL 4101325, at *17 (Cal. Ct. App. June 21, 2023).  Engaging in a slightly different analysis and subjecting the vaccine mandate to rational basis review, other courts have dismissed the complaint on a finding that the vaccine requirement was reasonable.  *Burcham v. City of Los Angeles*, 562 F. Supp. 3d 694, 705 (C.D. Cal. 2022) (holding that plaintiffs did not overcome the presumption of constitutional validity for the state's interest in public health measures); *Love*, 29 Cal. App. 5th at 993 (granting demurrer of a complaint challenging a mandatory vaccination policy in school, prior to COVID, which contained no religious exemptions); *Wolfe v. Logan*, No. 2:22-CV-06463, 2023 WL 2239062, at *6 (C.D. Cal. Jan. 25, 2023).

Because Defendants do not argue that the Court should engage in a rational basis style review of their vaccine policy or that the invasion of privacy was justified pursuant to *Hill*, the Court will not engage in such analyses.  Thus, the question is whether the facts alleged show that the Defendants' policy had an insubstantial impact on Plaintiff's asserted privacy interests.  At this stage, based on only the AC, the Court cannot say that the invasion on Plaintiff's interests was "de minimus or insignificant." *Firefighters4Freedom*, 2023 WL 4101325, at *17 (citation omitted); *LA Cnty. Free Found.*, 2022 WL 18278624, at *4.  While reporting whether one has received the COVID vaccines to HR is fairly minimal, disclosing medical or religious information to obtain an exemption may not be.  And choosing to get a vaccine, disclose certain medical or religious information, or quit your job also does not appear to the court, on the facts alleged in the AC, to be de minimus interference in an intimate personal decision.  For the same reasons, the Court holds that under the common law invasion of privacy,

*23-cv-580-GPC-VET*

whether the intrusion was highly offensive here is essentially a factual question inappropriate at this stage.

Defendants' arguments are unavailing.  That Plaintiff did not actually receive the COVID-19 vaccine or that he could have chosen to simply quit instead of revealing any personal information, *see* ECF No. 26-1 at 18-19, does not suggest that there was no invasion of his "interest[] in precluding the dissemination of sensitive . . . information . . . [or] making intimate personal decisions . . . without . . . interference."  *Hill*, 7 Cal. 4th at 35.  And while the Court agrees that "if intrusion is limited and confidential information is carefully shielded from disclosure . . . privacy concerns are assuaged," this analysis is part of the affirmative justification defense, not whether the invasion of privacy is substantial.  ECF No. 26-1 at 18 (citing *Alch v. Superior Ct.*, 165 Cal. App. 4th 1412, 1424 (2008)); *Hill*, 7 Cal. 4th 1, 40.

Accordingly, the Court DENIES the motion to dismiss the second cause of action, and holds that Plaintiff has stated a claim for both a constitutional *and* common invasion of privacy.  Although the Court analyzed these claims together, they remain distinct claims.

### 4. Third, Fourth, Fifth, and Sixth Causes of Action: Religious Discrimination, Failure to Prevent Discrimination, Failure to Accommodate Religious Beliefs, and Retaliation for Requesting Accommodation

Plaintiff alleges multiple claims based on the assertion that he refused the COVID vaccine because of religious belief.  The Court granted the prior motion to dismiss these claims.  ECF No. 20 at 20-27.  It finds that the AC has not added anything meaningful to change the Court's decision that Plaintiff did not have a protected religious belief and that even if he did, Defendants were unaware of it.  The Court therefore engages in substantially the same analysis as in its prior order.

Plaintiff raises four causes of action for violations of California's Fair Employment and Housing Act ("FEHA") stemming from religious discrimination: (1) his third cause

of action alleges that Defendants violated California Government Code § 12940(a) by engaging in religious discrimination, ECF No. 22 at 99-105; (2) his fourth cause of action alleges that Defendants violated California Government Code § 12940(k) by failing to prevent discrimination toward Plaintiff, *id.* at 105; (3) his fifth cause of action alleges that Defendants violated California Government Code § 12940(*l*)(4) by taking adverse actions against him in retaliation for his letter objecting to the vaccine mandate which he argues was a request for accommodation, *id.* at 109-115; and (4) his sixth cause of action alleges that Defendants violated California Government Code § 12940(*l*)(1) by failing to accommodate his sincerely held religious beliefs, *id.* at 115-121.  Defendants argue that Plaintiff fails to allege facts supporting his conclusion that he holds a legally protected religious belief or that Defendants were aware of such a belief.  ECF No. 26-1 at 19-27. The Court agrees.

Section 12940 of the California Government Code prohibits employers from discriminating against people based on "religious creed," among other protected classes. Generally, an employer may not hire, fire, or offer disparate terms of compensation, conditions, or privileges of employment based on a person's religion, Cal. Gov. Code § 12940(a), "unless the employer . . . demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, *id.* § 12940(*l*)(1).  Employers must also "take all reasonable steps necessary to prevent discrimination and harassment from occurring," *id.* § 12940(k), and may not "retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted," *id.* § 12940(*l*)(4).

"The elements of a religious creed discrimination claim [for the third cause of action] are that: the plaintiff had a bona fide religious belief; the employer was aware of that belief; and the belief conflicted with an employment requirement." *Friedman v. S. Cal. Permanente Med. Grp.*, 102 Cal. App. 4th 39, 45 (2002).  To succeed on his fourth

23-cv-580-GPC-VET

cause of action for failure to prevent discrimination under § 12940(k), a plaintiff must first demonstrate "actual discrimination or harassment under FEHA," in this case that he actually suffered religious discrimination.  *Carter v. Cal. Dep't of Veterans Affs.*, 38 Cal. 4th 914, 925 n.4 (2006).  Additionally, pursuant to § 12940(*l*)(1), Plaintiff's sixth cause of action, employers must accommodate employees' "religious beliefs unless doing so would impose undue hardship."  *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023).  And to make a prima facie case of retaliation for requesting accommodations under § 12940(*l*)(4), Plaintiff's fifth cause of action, a plaintiff must show that he engaged in a "protected activity."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042, (2005).[6]

Plaintiff's third through sixth causes of action fail because he fails to allege both that he holds a bona fide religious belief and that his employer was aware of any such religious belief.

### a.   Plaintiff fails to allege facts supporting that he held a legally protected religious belief.

Plaintiff alleges in the AC that "plaintiff held and continues to hold sincere religious beliefs that precluded the injection of COVID-19 vaccines into his body."  ECF No. 22 at 99 ¶ 338, 102 ¶ 345.  The AC itself contains little description of his allegedly religious belief other than that his "spiritual belief and knowledge of the science concerned him that defendant's request to receive an mRNA treatment might threaten the integrity of his spiritual being," *id.* at 102 ¶ 348, because it would "violat[e] [the] spiritual essence of genetically 'who [he was] as a person,'" *id.* at 33 ¶ 118.  In his letter to

---

[6] *Yanowitz* refers to § 12940(h), not § 12940(*l*)(4), but the parties do not present, and the Court was unable to find, a separate standard for § 12940(*l*)(4), which prohibits retaliation "for requesting accommodation under [§ 12940(*l*)]."  *See* Cal. Gov't Code § 12940(*l*)(4).

Defendants, attached to the AC, he listed nine reasons why he should not be "forced to receive unwanted medical procedures." *Id.* at 231.  The last of these was his "right to remain the essence of the person [he] was born to be; to maintain [his] sacred genetic constitution inherited from [his] parents[;] . . . the right of respect by others to do no harm to [his] spiritual being[;] [and that he is] not a slave." *Id.*  Although the Court need not question the sincerity of his beliefs, his conclusory allegations may be disregarded while the Court embarks on the "difficult and delicate task" of determining whether his beliefs constitute a legally protected religious belief or practice. *Friedman*, 102 Cal. App. 4th at 66, 69-70 (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981)).

"Religious creed" under FEHA is defined to "include[] any traditionally recognized religion as well as beliefs, observances, or practices, which an individual sincerely holds and which occupy in his or her life a place of importance parallel to that of traditionally recognized religions."  2 Cal. Code Regs. § 11060.  The "best way to assess whether an FEHA claimant's 'beliefs, observances, or practices'" constitute a legally protected "religious creed" is to objectively analyze whether:  (1) the beliefs "address[] fundamental and ultimate questions having to do with deep and imponderable matters"; (2) the beliefs are "comprehensive in nature; . . . consist[ing] of a belief-system as opposed to an isolated teaching"; and (3) the beliefs "can be recognized by the presence of certain formal and external signs." *Friedman*, 102 Cal. App. 4th at 69 (citation omitted).

Courts have found that "fundamental and ultimate questions having to do with deep and imponderable matters" might include "the meaning of human existence; the purpose of life; theories of humankind's nature or its place in the universe; matters of human life and death; or the exercise of faith." *Id.* at 70; *see also Afr. v. Com. of Pa.*, 662 F. 2d 1025, 1033 (3d Cir. 1981).  A belief may be so "comprehensive in nature" as to constitute a religion if, for example, the "belief system derives from a power or being or

1   faith to which all else is subordinate or upon which all else depends." *Friedman*, 102

2   Cal. App. 4th at 70; *accord United States v. Seeger*, 380 U.S. 163, 176 (1965).  And

3   "external signs of religion" include "teachers or leaders; services or ceremonies; structure

4   or organization; orders of worship or articles of faith; or holidays." *Friedman*, 102 Cal.

5   App. 4th at 70; *accord Alvarado v. City of San Jose*, 94 F.3d 1223, 1229 (9th Cir. 1996).

6   The "[f]lexible application" of these objective guidelines enables "courts and

7   administrative agencies to make the sometimes subtle distinction between a religion and a

8   secular belief system." *Friedman*, 102 Cal. App. 4th at 69.

9         There is nothing in the AC or attachments to the AC to suggest that Plaintiff's

10   beliefs precluding him from obtaining the COVID-19 vaccine constituted a "religious

11   creed" subject to FEHA's protection, even giving "great weight" to Plaintiff's allegations

12   that his beliefs are religious.  ECF No. 22 at 53 ¶ 207 (quoting *Seeger*, 380 U.S. at 184).

13   As with the original complaint, Plaintiff neither argues nor alleges that his belief system

14   at issue is comprehensive in nature, that it ponders any fundamental or ultimate

15   questions, or has any external signs upon which it can be recognized.  *See* ECF No. 22 at

16   50-53 ¶¶ 194-206, 99-102 ¶¶ 338-48 (absence).  In fact, the AC asserts that "the fact that

17   [Plaintiff] did not elaborate on details of his spiritual belief, beyond the brief . . .

18   statement on how COVID-19 vaccines could destroy his spiritual connection to his

19   ancestry, bears little weight with regards to evaluating whether it is a 'bonafide' belief."

20   *Id.* at 50 ¶ 196.  But this is an incorrect statement of law.  Under Rule 12(b)(6) the AC

21   must provide sufficient facts to allow the court to "draw the reasonable inference" that

22   Plaintiff acted due to a bona fide religious belief.  *Iqbal*, 556 U.S. at 678.  And by failing

23   to provide any details about his belief other than that it prohibited anything that he

24   believed could alter his "genetic constitution," the court cannot reasonably conclude that

25   Plaintiff acted due to his religious creed.

26

27                                                         22

28

The AC also asserts that his beliefs do not need to have visible manifestations to constitute a religion.  ECF No. 22 at 51 ¶ 197.  The Court agrees, but this proposition is of little help because Plaintiff has presented *no* indicia that his beliefs constitute a religious creed.  And in his Response, Plaintiff makes none of these arguments but instead asserts that "Counsel and defendants really need to get a grip on current facts which justify plaintiff's concerns in early 2022 [regarding the vaccine]."  ECF No. 29-1 at 22.

Thus, even though Plaintiff has made conclusory allegations that he had a sincerely held religious belief preventing him from obtaining the COVID-19 vaccination, he has failed to allege that he held a belief that would be recognized as a religious creed and thus protected under FEHA.

> **b.    Plaintiff also fails to allege facts supporting that Defendants were put on notice of any sincerely held religious belief.**

The AC asserts that "defendants cannot claim they were 'unaware' of plaintiff's religious belief" because he delivered his January 2022 letter by mail and email to HR and officers of Defendants, including Defendant Rocha.  ECF No. 22 at 104 ¶ 356, 107 ¶ 366, 120 ¶ 415.  Nonetheless, the letter and his description of how he submitted the letter contradict such claims.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (explaining that on a motion to dismiss for failure to state a claim, the court need not accept as true allegations that are conclusory, unwarranted, or contradicted).

First, the contents of the letter and its attachment do not suggest that Plaintiff was refusing to comply with the vaccine policy for religious reasons or that a reasonable accommodation would be feasible.  ECF No. 22 at 226-71.  The closest the letter comes to addressing any religious beliefs is when it lists his "spiritual wellbeing, and right to remain the essence of the person [he] was born to be; to maintain [his] sacred genetic constitution inherited from [his] parents, and the right of respect by others to do no harm to [his] spiritual being" as one reason that he should not have to be vaccinated against

COVID.  *Id.* at 231.  This is made all the more apparent later in the attachment to the letter when Borrello distinguishes his reasons for not vaccinating from those concerning religious beliefs: although some people may use the fact that COVID-19 vaccines "are a therapy that messes with the genetic machinery of somatic cells . . . to argue a religious exemption ( . . . Pfizer vaccines are indeed manufactured using human fetal tissue), my primary concern rather considers possible long-term effects that cannot be predicted by any computer simulation or paper analysis." *Id.* at 236.  Nowhere else in the 45 pages of Plaintiff's letter or attachment does he talk about anything approaching a religious belief.

Second, the circumstances around Plaintiff's submission of the letter would not put a reasonable employer on notice of any religious beliefs even if Plaintiff had raised the matter in its contents.  Philips asked its employees, Plaintiff included, to upload proof of vaccination or their approved reasonable accommodation the HR portal by January 10, 2022. *Id.* at 176.  The FAQ page associated with the vaccine policy instructed that "[e]mployees with a sincerely held religious belief and/or disability impacting their ability to obtain the COVID vaccine should request a reasonable accommodation via the HR Portal." *Id.* at 264.  The AC does not allege that Plaintiff followed these instructions for requesting a reasonable accommodation for a religious belief.  Instead, he wrote the letter described above, in which he heavily emphasized his concern about the safety of the vaccine.  And when Plaintiff met with a HR representative prior to his last day, the representative admitted that she had "seen [his letter], but had not fully read it." *Id.* at 35 ¶ 125.

In fact, the AC, like the original complaint, explicitly asserts that his "letter was never reviewed and considered by defendant's HR & management." *Id.* at 38 ¶ 140.  Absent any factually-supported suggestion that the letter and attachment indicated that Plaintiff sought a religious accommodation, he fails to allege that the Defendants were ever made aware that his "religious" beliefs precluded him from obtaining the vaccine.

Because the Complaint fails to allege that Plaintiff held a religious belief recognized under FEHA and that Defendants were ever aware of his purportedly bona fide religious belief, the Court GRANTS Defendants' motion to dismiss Plaintiff's claims for religious discrimination, failure to prevent discrimination, failure to accommodate his religious beliefs, and retaliation he suffered for requesting accommodation—his third, fourth, fifth, and sixth causes of action.[7]  Given that the Court has already dismissed these claims once, that Plaintiff failed to cure the defects, and that there do not appear to be any facts Plaintiff can allege to state a claim for religious discrimination, the Court DENIES leave to amend.

**5.  Seventh Cause of Action: Breach of Implied Covenant of Good Faith and Fair Dealing**

"The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988).  As a result, "[a]n at-will employee cannot use the implied covenant to create a for cause employment contract where none exists."  *Eisenberg v. Alameda Newspapers., Inc.*, 74 Cal. App. 4th 1359, 1391 (1999).  If the employee can show that their employment relationship was governed by an implied-in-fact contract, they can successfully make a breach of implied covenant claim if the employer acted to unfairly frustrate a specific terms of the implied contract in a way that is not directly actionable

---

[7] Plaintiff defends his fourth, fifth, and sixth causes of action on the ground that Defendants' vaccine requirement was unreasonable, ECF No. 29-1 at 22-23, but whether it was reasonable or not, he cannot state a claim under these causes of action if he cannot show a bona fide religious belief (or that he was part of some other protected class) and that Defendants were aware of it.

under the contract.[8]  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349, 352 (2000).  If the employee cannot show an implied-in-fact contract, they can recover for a violation of the implied covenant only under a narrow exception in which the employer uses fraud to cheat an employee out of an entitlement.  *See id.* at 353 n.18.

Plaintiff has failed to sufficiently plead the first step—that an implied-in-fact contract governing the terms of his employment or terms for the termination of his employment existed.  Plaintiff does not allege that Respironics ever promised him indefinite or for cause employment but rather argues that an implied-in-fact contract was created through Philips' "virtual handbook," "a collection of scattered documents, email communications, and/or links to third party contractors that collectively constituted an effective company policy manual (aka employee handbook)" governing the conditions of employment.  ECF No. 22 at 130 ¶ 452, 14 ¶ 30.  Although the existence of personnel polices may contribute to a finding of an implied-in-fact contract, the simple fact that company policies existed is not enough.  *See Guz*, 24 Cal. 4th at 339.  Here, Plaintiff has presented no information on the content of those policies other than the Severance Plan.  *See* ECF No. 22 at 14 ¶¶ 30-33, 122-38 ¶¶ 423-69 (absence).  And the Severance Plan does not restrict whether Philips may add new conditions of employment or how or why Philips may terminate an employee.  *Id.* at 190-204.  Plaintiff has not shown that following his acceptance of the at-will employment offer in 2012, he and Philips agreed to any terms in addition to or instead of their original at-will relationship.  *See id.* at 174 (offer letter stating "You and Philips agree that your employment is at-will . . . . There is

---

[8] Although the parties, and the Court in its previous decision, used the Judicial Council of California Civil Jury Instructions as a framework, the Instructions direct not to give "this instruction if the alleged breach is only the termination of an at-will contract."  Judicial Council of California Civil Jury Instructions (2022), CACI No. 2423; ECF No. 20 at 28 (prior order); ECF No. 22 at 128 ¶ 448 (AC); ECF No. 26-1 at 27-28 (motion to dismiss).

no agreement, expressed or implied, for any specific period, length, or term of employment.").  Thus, Plaintiff has not pled sufficient facts to show an implied-in-fact contract governing the conditions of his employment or termination.

In addressing the claims of an at-will employee, the California Supreme Court explained that "the implied covenant of good faith and fair dealing imposes no independent limits on an employer's prerogative to dismiss employees" and further that "[w]here the employment contract itself allows the employer to terminate at will, its motive and lack of care in doing so are, in most cases at least, irrelevant."  *Guz*, 24 Cal. 4th at 351.  This is because the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."  *Id.* at 349-50; *see also Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992) ("It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract.").  And there are no terms govering termination or conditions of employment in an at-will employment relationship.

Nonetheless, *Guz* recognized one narrow exception: "the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned."  *Id.* at 353 n.18.  Thus, an at-will plaintiff can make out a claim against his employer arising out of his termination only if he plausibly alleges the termination was pretext to cheat him out of an entitlement which he had already earned.

Plaintiff argues that Defendants breached the implied covenant by (1) imposing a new requirement to receive an allegedly dangerous vaccine or disclose medical or religious information to obtain an exemption and (2) using the vaccine mandate as a pretext for removing employees without having to pay severance proceeding mass layoffs.  ECF No. 22 at 122-23 ¶ 423.  The Court rejects Plaintiff's argument that

Defendants violated the implied covenant of good faith and fair dealing by adding a condition of employment to get the vaccine or an exemption.  The exception recognized in *Guz* is clearly inapplicable to adding a condition of employment in this case.

However, Plaintiff also alleges that Defendants enacted the vaccine policy, in which those who refused the vaccine were considered voluntary quits, "as a pretext and preemptive measure to remove employees ahead of mass layoffs and plant closures so that defendants could deny plaintiff and over 4000 other Philips employees severance and unemployment benefits."  ECF No. 22 at 122-23 ¶ 423.  To assess whether the AC has plausibly alleged a violation of the implied covenant for good faith and fair dealing as to this conduct, the Court must determine if severance and unemployment benefits constitute "benefit[s] to which the employee was clearly entitled, such as compensation already earned."  *Guz*, 24 Cal. 4th 317, 353 n.18.  District courts have held that firing an employee to avoid paying them commission they were entitled to can constitute a violation of the implied covenant for an at-will employee.  *Compare McCollum v. XCare.net, Inc.*, 212 F. Supp. 2d 1142, 1145, 1153 (N.D. Cal. 2002) (denying summary judgment for employer where employer terminated plaintiff shortly before finalizing a contract on which plaintiff would have earned over $500,000 in commission), *with Pashman v. Aetna Ins. Co*, No. C-13-02835, 2014 WL 3571689, at *14 (N.D. Cal. July 18, 2014) (granting summary judgment for employer where plaintiff conceded that they had not yet earned the commissions on the deal at the time of termination).

As best as this Court can tell, only one other court has addressed the particular question with regards to severance, holding that a "future payment of a severance" was not "compensation already earned[.]"  *Cynaumon v. Veritone, Inc.*, No. SACV151804, 2016 WL 9045573, at *4 (C.D. Cal. Jan. 7, 2016).  On the facts present in this case, the Court agrees.  The Philips Severance Plan is attached to the AC, ECF No. 22 at 190-204, and it makes clear that severance benefits are discretionary, *id.* at 194.  It states "[t]he

Company in its sole discretion may offer severance benefits under this Plan . . . in certain circumstances," and "[s]everance benefits under this Plan are not a right accrued by any employee by virtue of employment and decisions in this matter remain the prerogative of management." *Id.* at 192.  Similarly, employees are not entitled to unemployment benefits prior to termination.  Accordingly, severance and unemployment are not benefits to which Plaintiff was entitled, and he cannot allege a claim for an implied covenant for good faith and fair dealing under the narrow exception in *Guz* for at-will employees.

Defendants' motion to dismiss Plaintiff's seventh cause of action is hereby GRANTED.[9]  The Court GRANTS leave to amend because at the hearing, Plaintiff requested leave to add a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), which could potentially impact the analysis of this claim.

### 6. Eighth and Ninth Causes of Action: Direct Fraud and Negligent Representation

"The California Civil Code recognizes causes of action for 'actual fraud' . . . ." *Metro. Bus. Mgmt., Inc. v. Allstate Ins. Co.*, 282 F. App'x 544, 546 (9th Cir. 2008).  Under California Civil Code § 1572, actual fraud is defined as:

> [A]ny of the following acts, committed by a party to the contract, . . . with intent to deceive another party thereto, or to induce him to enter into the contract:
> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;

---

[9] The Court notes that even if Plaintiff had shown an implied-in-fact contract, his claim would still fail because he failed to specify the terms of the implied contract such that the Court could determine if the implied convenant was violated as to them.

4. A promise made without any intention of performing it; or,

5. Any other act fitted to deceive.

"In California, the elements of a cause of action for fraud are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) (internal quotation marks and citation omitted); *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 509 (9th Cir. 1989) ("To establish actual fraud . . . the plaintiff must show that the defendant, with intent to deceive or induce the plaintiff to enter into a contract, (1) misrepresented a material fact, (2) suppressed facts it knew or believed to be true, or (3) made a promise intending not to perform it.").

In his eighth cause of action, Plaintiff alleges that Defendants committed intentional fraud under § 1572 by using the pretext of a vaccine mandate to compel resignations in advance of mass layoffs to save on severance and unemployment benefits. ECF No. 22 at 138 ¶ 470. Instead of choosing one particular subsection of § 1572, the AC canvasses the ways in which this could violate each subsection (1) through (4) of § 1572, *id.* at 140-42 ¶¶ 476-79, and as a result Defendants argue that Plaintiff failed "to plead with specificity which of the five acts of fraud set forth in section 1572 he claims occurred." ECF No. 26-1 at 29. Although the eighth cause of action in the AC is not the model of clarity, it asserts that the alleged fraudulent conduct was intentionally using the vaccine mandate as pretext for cheaper layoffs, which sufficiently puts Defendants on notice of Plaintiff's claim. ECF No. 22 at ¶ 482.

Plaintiff's ninth cause of action also alleges a violation of § 1572, but under the final subsection "(5) any other act fitted to deceive," and contends that Defendants negligently conveyed that the COVID-19 vaccine was safe and effective. ECF No. 22 at 148-49 ¶ 497. Because Plaintiff obviously did not rely on this message and was not induced to receive the COVID vaccine because of it, he cannot make out a claim for

30

fraud or negligent misrepresentation on this basis. *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d at 717 (holding that justifiable reliance is an element of Cal. Civ. Code § 1572). The ninth cause of action therefore fails to state a claim.

Regarding both the eighth and ninth causes of action, the Court agrees with Defendants that there is no contract governing the employment relationship, ECF No. 26-1 at 29, and holds that, as a result, Plaintiff fails to state a claim because he cannot show detrimental reliance. *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d at 717. The California Supreme Court has previously addressed a similar situation in which a plaintiff alleged a cause of action for fraud against his former employer on the ground that he was given false information to convince him to resign. *Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174, 1179 (1993). The Supreme Court denied the claim, holding:

> The misrepresentation transformed what would otherwise have been a resignation into a constructive termination. . . . Thus, [the employer] simply employed a falsehood to do what it otherwise could have accomplished directly. It cannot be said that [plaintiff] relied to his detriment on the misrepresentation in suffering constructive dismissal. Thus, the fraud claim here is without substance.

*Id.* at 1184. The Supreme Court expounded further that "we applied traditional fraud analysis in the context of a termination desired by the employer, where misrepresentation was introduced only in the course of effecting the desired termination, and where the employer could have accomplished the termination directly," and held that the plaintiff could not allege detrimental reliance. *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 641-42 (1996). "In short, because [Defendants] had both the power and intention of discharging [Plaintiff] in any event, [Plaintiff] was no worse off for being induced by [Defendant's] misrepresentation to resign [or voluntarily quit]." *Id.* at 642.

*Hunter* did not involve an at-will contract, but that only makes its reasoning stronger as applied to this case. *See Hunter*, 6 Cal. 4th at 1179. Because Plaintiff was undisputedly an at-will employee, *see* ECF No. 22 at 173, he could have had no

reasonable expectation of continued employment or of being discharged in a particular way.[10]  He therefore could not have detrimentally relied on Defendants' allegedly fraudulent inducements to quit.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's eighth and ninth causes of action.  Given that the Court's reasoning differed somewhat from its prior order to dismiss, the Court is not prepared to say it is impossible for the pleading deficiencies to be cured. It thus GRANTS Plaintiff leave to amend his complaint as to his eighth and ninth causes of action.

7. **Tenth Cause of Action: Wrongful Termination in Violation of Public Policy**

In the AC, Plaintiff alleges a cause of action for wrongful termination in violation of public policy under common law.  ECF No. 22 at 157.  Though the Plaintiff does not frame it as such, he appears to be making a *Tameny* claim.  *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167 (1980) (holding that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions").  At-will employees may make these claims because "the employer's right to discharge an 'at will' employee is still subject to limits imposed by public policy, since otherwise the threat of discharge could be used to coerce employees into committing crimes, concealing wrongdoing, or taking other action harmful to the public weal."  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 665 (1988).

"The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's

---

[10] Plaintiff does not allege sufficient facts to suggest that his at-will employment relationship created an implied contract.  *See* ECF No. 22 at 14 ¶¶ 30-33 (stating that there were company policies, which can sometimes create an expectation of continued employment, but not stating their contents, other than the Severance Plan).

23-cv-580-GPC-VET

employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 154 (2014).  A violation of public policy must be based on constitutional or statutory provisions, *id.* at 155, and in addition "must . . . affect[] a duty which inures to the benefit of the public at large rather than to a particular employer or employee." *Foley*, 47 Cal. 3d at 669.  The California Supreme Court has held that cases finding violations of public policy typically fall into four categories: (1) refusing to violate a statute; (2) performing a statutory obligation; (3) exercising a statutory right or privilege; and (4) reporting a violation of a statute of public importance. *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1090 (1992), *overruled on other grounds by Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66 (1998).

Plaintiff alleges that all of the violations of the previously alleged causes of action show that Defendants violated public policy by terminating Plaintiff for refusing to get the COVID vaccine or request an accommodation.  ECF No. 22 at 157-58.  Because Plaintiff has failed to state a claim as to religious discrimination, failure to accommodate, retaliation for requesting accommodations, the implied covenant of good faith and fair dealing, and fraud, he cannot rest on these claims to show that Defendants' behavior violated the public's interest in addition to his own.  As to the second cause of action, constitutional invasion of privacy, which overcame the motion to dismiss, Plaintiff cannot show that Defendant's alleged violation affects the public's interest.

Objecting to the Defendants' alleged invasion of Plaintiff's own privacy does not "inure[] to the benefit of the public at large rather than to a particular employer or employee." *Foley*, 47 Cal. 3d at 669.  Defendants' vaccine policy required employees to become vaccinated and report it to their HR department, disclose their religious or medical information to HR to receive an exemption, or end their employment.  ECF No. 22 at 85 ¶ 295, 87 ¶ 304.  This policy, to which Plaintiff objected and under which he was

forced to end his employment, does not involve violating a statute, performing a statutory obligation, or reporting a violation of law. *See Gantt*, 1 Cal. 4th at 1090. Arguably, it restricted Plaintiff's and other employees' exercise of a legal right—the right to privacy. But it had no affect or implication for the public at large. It is a far cry from the circumstances in which courts usually find a public policy violation: where the public is directly implicated. *Compare Collier v. Superior Ct.*, 228 Cal. App. 3d 1117, 1123 (Ct. App. 1991) (holding that reporting suspicion of illegal conduct by coworkers "served not only the interests of his employer, but also the public interest in deterring crime and . . . the interests of innocent persons who stood to suffer specific harm from the suspected illegal conduct"), *with Foley*, 47 Cal. 3d at 664, 670-71 (concluding that reporting that a new employee was under investigation for embezzlement at a prior employer would only serve the private interest of the employer and therefore did not constitute a public policy violation).

Thus, Plaintiff cannot show that his termination was substantially motivated by a violation of public policy. *See Yau*, 229 Cal. App. 4th at 154. As such, the Court GRANTS the motion to dismiss the tenth cause of action with leave to amend.

## 8. **Non-Employer Defendants**

In addition to challenging each cause of action, Defendants contend that Plaintiffs failed to state a claim against the non-employer entity defendants and Defendant Rocha. ECF No. 26-1 at 30-32. Plaintiff filed his AC against the same seven Defendants as in his first complaint and added as Defendants John/Jane Does. ECF No. 22-1 at 1. In its prior order, the Court held that Plaintiff "failed to raise specific allegations for direct liability against the non-employer defendants sufficient to give them 'fair notice[.]'" ECF No. 20 at 34 (citation omitted). The Court finds that Plaintiff has added sufficient allegations to state a claim against Defendant Rocha and therefore his employer,

Defendant Philips Holding USA Inc., but not against the remaining non-employer Defendants.

As with the original complaint, the AC typically refers to Defendants collectively. *See, e.g.*, ECF No. 22 at 6-8 ¶¶ 1-2.  Moreover, the ten causes of action appear to be against all Defendants and do not specify whether any particular defendant's actions gave rise to the cause of action.  *See id. generally*.  The one exception is Defendant Rocha, who the AC sometimes addresses individually.

Regarding Rocha, the AC repeats the allegations in the original complaint: that Rocha was the Chief Market Leader "of North America" and CEO of Philips Holding USA Inc., *id.* at 8 ¶ 2(g), that he signed the October 2021 email introducing the COVID vaccine policy, *id.* at 16 ¶ 46, and that he was a recipient of Plaintiff's letter, *id.* at 31 ¶ 114.  In addition, the AC asserts that Rocha "was leader of all US operations and endorsed the global vaccine mandate imposed by Dutch parent corporation . . . [and] endorsed, initiated, and enforced a COVID-19 vaccine policy in the US[.]"  *Id.* at 55 ¶ 212.  It further clarifies that "Mr. Rocha . . . was in charge of all of Philips' operations in the US, and had wholeheartedly endorsed and enacted . . . a new condition of employment for all North American Operations [the vaccine], including plaintiff's employer, Respironics California LLC[.]"  *Id.* at 56 ¶ 213.

Accepting these facts as true and drawing all inferences in Plaintiff's favor, *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010), the Court finds that these allegations make it plausible that Rocha was responsible for Defendants' vaccine policy and Plaintiff's termination.  Because the AC also alleges that at all relevant time periods Rocha was the CEO of Defendant Philips Holding USA Inc., and because all allegations indicate that Rocha acted within the scope of his employment, the Court holds that the AC states a claim against Philips Holding USA Inc. as well, under a theory of respondeat superior.  *See Vebr v. Culp*, 241 Cal. App. 4th 1044, 1055 (2015) ("Under the theory of

respondeat superior, employers are vicariously liable for tortious acts committed by employees during the course and scope of their employment.")

For the remaining non-employer Defendants, Plaintiff has failed to state a claim. The AC lists each entity defendant, including its corporate parent, *id.* at 6-8 ¶ 2, and alleges that all defendants are liable for each cause of action under either direct liability, joint and several liability, respondeat superior liability, or alter ego liability, *id.* at 4-5, 9 ¶¶ 3, 6. However, it does not state facts from which the court could "draw the reasonable inference" that the non-employer defendants were liable through one of these mechanisms. *See Iqbal*, 556 U.S. at 678. Rather it makes conclusory statements.

For example, the AC does not explain why any Defendants are alter egos of each other, stating only that "Respironics California LLC was so closely controlled by [some] parent corporations(s) that the managers in Carlsbad claimed they had no control or idea who was making the decisions and so plaintiff claims defendants should be considered as one entity under the Alter Ego doctrine." *Id.* at 4 (alterations in original). Even if the AC identified the "parent corporation," this does not "allege sufficient facts to show a unity of interest and ownership" as necessary to show alter ego status. *Leek v. Cooper*, 194 Cal. App. 4th 399, 415 (2011). In a similar fashion regarding supervisory liability, the AC asserts that "at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants[.]" *Id.* at 9 ¶ 3. But again this is conclusory. Thus, as to the non-employer entity Defendants other than Philips Holding USA, the Court finds that the AC fails to state a claim.

Plaintiff's only counterargument is that it is "too early to consider [the question] until further discovery[.]" ECF No. 29-1 at 25. But that Plaintiff may learn more in discovery about how the companies are related and which company made which decision is inapposite at this time. The Court is sympathetic to Plaintiff's contention that the

incidents at issue "were carried out without sufficient information or transparency regarding who ordered and executed the operations," and that he therefore does not know which corporate parent to name.  ECF No. 22 at 3-4.  Nonetheless, this does not excuse compliance with the Federal Rules of Civil Procedure and permit a fishing expedition.

For these reasons, Defendants' motion to dismiss Respironics Novametrix, LLC; Philips North America LLC; Philips RS North America LLC; and Philips DS North America LLC is GRANTED.  As to Respironics, Vitor Rocha and Philips Holding USA Inc., the motion is DENIED.

Because it is conceivable that facts exist to cure the above-described defects, the Court grants Plaintiff leave to amend to plead with more specificity how the other Defendants may be liable.

### 9. **Punitive Damages**

Finally, Defendant's motion to dismiss also requests that the Court dismiss all requests for punitive damages.  ECF No. 26-1 at 32.  "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover" punitive damages.  Cal. Civ. Code § 3294(a); *Smith v. Superior Court*, 10 Cal. App. 4th 1033, 1041 (1992).  Employers are not liable for punitive damages "based upon acts of an employee of the employer, unless the employer . . . ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud or malice."  Cal. Civ. Code § 3294(b).

As in the original complaint, the AC does not allege that any particular individual engaged in any oppressive, fraudulent, or malicious behavior under § 3294.  Instead, the AC asserts only that the "acts committed by defendants were oppressive, malicious, and despicable[.]"  ECF No. 22 at 158 ¶ 569.  Such conclusory allegations are insufficient. *See Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010).  The AC

also alleges that Defendants' actions caused emotional, financial, and stigmatic harm to Plaintiff and his family as well as to other employees, but these facts do not support the conclusion that agents of Defendants were guilty of oppression, fraud, or malice.  *See* Cal. Civ. Code § 3294(a).  Moreover, the Court dismissed the allegations of intentional fraud, the eighth cause of action, so that claim may not form a basis for punitive damages.  *See supra.*

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's request for punitive damages with leave to amend.

**C. MOTION TO STRIKE**

In responding to the motion to dismiss, Plaintiff also moved to strike "defendants' mischaracterization of plaintiff's pleading," specifically for Defendants' arguments that the AC was insufficiently pled and contains "conclusory allegations" and "unwarranted inferences."  ECF No. 29 at 6; ECF No. 29-1 at 26-28.  Plaintiff contends that Defendants' motion abused Rule 12(b)(6), ECF No. 29-1 at 26-28, but Plaintiff misunderstands Rule 12(b)(6).  The Rule is not intended to "only be claimed in clear cut cases of fraudulent or frivolous action" or to "dismiss claims only when devoid of any conceivable factual basis."  *Id.* at 26, 28.  Rule 12(b)(6) functions to dismiss any complaint which does not state sufficient factual matter to be "plausible on its face." *Iqbal*, 556 U.S. at 678.  The Court holds that Defendants' motion to dismiss properly makes arguments under the Rule.  It does not contain "redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (defining the conditions under which the Court may strike material from a pleading).  The Court therefore DENIES the motion to strike.

**D. CONCLUSION**

Defendants' motion to dismiss Respironics Novametrix, LLC; Philips North America LLC; Philips RS North America LLC; and Philips DS North America LLC is

GRANTED.  Defendants' motion to dismiss Respironics California LLC, Vitor Rocha, and Philips Holding USA Inc. is DENIED on the first cause of action as to the common law invasion of privacy and second cause of action.  The motion to dismiss all other causes of action is GRANTED.  The motion to dismiss the request for punitive damages is GRANTED.  In other words, the amended complaint may move forward without punitive damages only as to the common law invasion of privacy claim within the first cause of action and the second cause of action and only against Respironics California LLC, Vitor Rocha, and Philips Holding USA Inc.

The Court grants Plaintiff leave to amend, except as to the third through sixth causes of action and the first cause of action as to California Civil Code § 1708.  At the hearing, Plaintiff requested leave to add a claim under ERISA.  The Court grants Plaintiff leave to do so in a Second Amended Complaint.

A Second Amended Complaint, if any, shall be filed within **45 days** of the date of this order.  The Second Amended Complaint, not including attachments, may be **no more than 60 pages**.

The motion to strike is DENIED.

**IT IS SO ORDERED.**

Dated:  April 5, 2024

Hon. Gonzalo P. Curiel
United States District Judge

39

*23-cv-580-GPC-VET*